

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP/ICR
F. #2016R00532

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 27, 2024

By ECF and E-mail

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Sinmyah Amera Ceasar
>        Criminal Docket No. 17-48 (KAM)
>        Criminal Docket No. 19-117 (KAM)
>        Criminal Docket No. 22-459 (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter brief in response to the Court's request that the parties address: (1) the Probation Department's request to "withdraw" the violations of supervised release committed by the defendant Sinmyah Amera Ceasar (the "defendant" or "Ceasar"); (2) the continuing validity of the defendant's violations of supervised release following the Court of Appeals' vacatur of the judgment imposing the term of supervised release; (3) the continuing validity of the defendant's conviction for failure to appear before the Court as ordered in connection with her attempted flight; (4) whether, assuming that the defendant's term of supervised release may no longer be revoked, the Court may nonetheless consider the conduct underlying the defendant's violations of supervised release when it sentences the defendant for the Material Support Offense (No. 17-CR-48), the Obstruction Offense (No. 19-CR-117), and the Failure to Appear Offense (No. 22-CR-459).

For the reasons below, the government respectfully submits that the Court should (1) cancel the VOSR sentencing hearing because the Court lacks the authority to revoke or modify the defendant's term of supervised release following the Second Circuit's decision vacating the judgment in which it was contained, (2) deny the Probation Department's request to withdraw the VOSR reports in this case and consider the conduct described therein at the defendant's resentencing as relevant conduct, and (3) proceed to a single consolidated sentencing for the Material Support Offense, Obstruction Offense, and Failure to Appear Offense.

I.      Background

On June 26, 2019, Judge Weinstein imposed on the defendant a total sentence of 48 months' imprisonment, apportioned as follows: 46 months for the Material Support Offense (under 17-CR-48), one month for the Obstruction Offense (under 19-CR-117), and one month pursuant to 18 U.S.C. § 3147 because the defendant committed the second offense while on bail, to be followed by a total of eight years' supervised release subject to conditions similar to those the defendant had violated on presentence release.[1] Amended judgments reflecting the orally imposed sentence were entered on each of the dockets on August 12, 2019, and the government timely appealed. On December 13, 2019, the government filed its principal brief, arguing that the defendant's sentence of imprisonment was substantively unreasonable. See Appellant's Br. United States v. Ceasar, No. 19-2881(L), ECF No. 31 (2d Cir. Dec. 13, 2019). The defendant moved in the Court of Appeals to dismiss the government's appeal as untimely. After briefing both the merits appeal and the motion, a Motions Panel of the Court of Appeals referred the motion to the Merits Panel assigned to consider the government's appeal, and the Court of Appeals held oral argument on October 19, 2020. Ceasar did not cross-appeal or otherwise challenge the term of supervised release or special conditions of supervised release imposed by Judge Weinstein.

While the government and the defendant litigated the government's sentencing appeal in the Court of Appeals, the defendant completed the 48-month term of imprisonment imposed by Judge Weinstein and commenced her term of supervised release on July 28, 2020. See Gov't Ltr., ECF No. 124, Dkt. No. 17-CR-48 (E.D.N.Y. July 28, 2020). In a letter filed the same day, the government noted that the Bail Reform Act did not address the specific circumstance in which a defendant completes a term of imprisonment while the government's appeal of the defendant's sentence is pending, but noted that in that circumstance at least one Court of Appeals had ordered a defendant detained pending appeal, and observed that even while on supervised release the defendant would be under strict conditions of supervision. See id. at 1 n.1.

The defendant began violating the conditions of her term of supervised release almost immediately after she was released from prison and commenced her term of supervision. The Probation Department submitted a report notifying the Court and the parties of evidence establishing that the defendant had violated her supervised release conditions on November 2, 2020 (the "First VOSR Report"). The First VOSR Report reported conduct violating the defendant's conditions of supervised release beginning as early as August 13, 2020, organized into charges that the defendant had violated three separate conditions of her term of supervision. The violations detailed in the First VOSR Report related to the defendant's unreported, unauthorized, and unsupervised, use of electronic devices, applications, and accounts in violation of computer monitoring conditions imposed by Judge Weinstein as a condition of her supervised release, and the defendant's unauthorized conduct with convicted felons.

The Court arraigned the defendant on the violations of supervised release detailed in the First VOSR Report on November 20, 2020. See Tr. of Nov. 20, 2020 Arraignment. Pursuant

---

[1]      The government assumes the Court's familiarity with the lengthy and complex procedural and factual record in this case, highlighting here only those facts most relevant to the legal issues addressed in this letter.

to Rule 32.1 of the Federal Rules of Criminal Procedure, the Court informed the defendant of the nature of the violations she was alleged to have committed, confirmed that she understood the charges, and entered a not guilty plea.  See id. at 2-5.  During the hearing, the government emphasized that the nature of the defendant's violations were of particular concern because of their similarity to the defendant's conduct underlying the Material Support Offense and the Obstruction Offense, and the Court agreed.  See id. at 7-8.  The parties then discussed scheduling a sentencing hearing, with defense counsel arguing that even if the government could prove the violations of the defendant's conditions of supervised release without proving what the defendant had used the electronic devices, apps and accounts for, the Court should not sentence the defendant for the violations without that information.  See id. at 10-25.  During that discussion, the government urged the Court to hold a hearing adjudicate the violation in December 2020, even if it waited to sentence the defendant for the violations, noting that the government would seek to revisit the defendant's release on bail after the defendant had been found to have committed the violations.  See id. at 14 ("We would address the question of bail if and when the violations were proven up in").  At the conclusion of the hearing the Court gave the defendant the following order, "So, Ms. Ceasar, you must continue to report to your Probation officer as directed. Please, given these charges let me just caution you that you should not open any new accounts or access the internet using any accounts. If you are planning to do so, you need to disclose that to your officer, do you understand that, ma'am?"  The defendant confirmed she understood.  See id. at 29.

On January 5, 2021, the defendant pleaded guilty to the first and third charges of the violation report, charging her with her downloading various applications to her cellular telephone and accessing those applications without reporting them to the Probation Department, and communicating with known felons.  The defendant's plea was pursuant to an agreement between the defendant and the government.  Specifically, as stated on the record during the change of plea hearing, the parties agreed that the defendant would plead guilty to those two charges in exchange for the dismissal of the third charge.  See Tr. of Plea Hearing, dated Jan. 5, 2021, at 11-12.  The Court found that there was a factual basis and accepted the plea.  Id. at 23.

After accepting the defendant's plea of guilty to the violations, the Court then addressed the defendant's conditions of release pending sentencing on the violations.  Specifically, the Court inquired "I understand that you are going to be continuing your supervision with your officer and, government, you're not seeking any new conditions, are you, at this time prior to sentencing?"  Id. at 23.  The government confirmed, before the Probation Department interjected to request that the Court modify the defendant's conditions to request that the Court extend the original period of home confinement and electronic monitoring until the date of the defendant's sentencing on the violations.  See id. at 23-24.  The parties consented to the request and the Court issued an order requiring that the defendant remain on home confinement with location monitoring until the date of sentencing.  See id. at 25.

In the months that followed the defendant's admission that she had violated the conditions of her supervised release in the summer and fall of 2020, the government repeatedly requested that the Court hold a final revocation hearing to sentence the defendant for her violations of supervised release, while the defendant sought repeated delays.  In its written submissions to the Court and in monthly status conferences that the Court held to discuss the defendant's behavior on supervised release, the government highlighted the defendant's continued noncompliance with

the conditions of her supervised and its concern that the behavior underlying her continued violations demonstrated concerning similarities to the conduct underlying her commission of the Material Support Offense and the Obstruction Offense in objecting to further delays of the revocation hearing. See, e.g., Gov't VOSR Sentencing Mem., ECF No. 139, Dkt. No. 17-CR-48 (E.D.N.Y. Mar. 29, 2021); Tr. of Mar. 30, 2021 Status Conf. at 14-20; Tr. of Apr. 28, 2021 Status Conf. at 8-9; Tr. of May 25, 2021 Status Conf. at 20-32. In periodic status updates provided to the parties and to the Court, and in statements made to the Court at these same monthly status conferences, the defendant's supervising probation officers repeatedly noted the difficulty they had encountered in attempting to supervise the defendant, and likewise urged the Court to sentence the defendant for her violations of supervised release.

At a status conference on July 29, 2021, the Court scheduled a subsequent status conference on August 25, 2021, to address Ceasar's compliance with the conditions of her supervised release. Tr. of July 29, 2021 Status Conf. at 7-8.

On Thursday, August 18, 2021, the Court of Appeals issued an opinion holding that "Ceasar's far-below-Guidelines sentence was outside the bounds of what was reasonable in light of the facts and circumstances of this case." United States v. Ceasar, 10 F.4th 66, 87 (2d Cir. 2021). In its decretal language the Court of Appeals explained, "[f]or the foregoing reasons, we VACATE the judgment of the district court and REMAND for resentencing consistent with 18 U.S.C. § 3553(a) and this opinion." Id.; see also Order of USCA, ECF No. 155, Dkt. No. 17-CR-48 (E.D.N.Y. Aug. 18, 2021). The same day, this Court issued a minute order on the docket, noting "In light of 155 Order of the U.S. Court of Appeals filed in Case No. 17-cr-00048, in advance of the status conference on August 25, 2021, at 9:00 am, the parties are invited to file status updates with the court regarding any contemplated next steps by close of business August 23, 2021." On August 19, 2021, the Court issued another order on the docket reiterating that the status conference had been scheduled for 9:00 a.m. on August 25, 2021.

On August 23, 2021, the government filed a letter motion, captioned on the docket as a "Letter Motion for Order of Detention Pending Further Proceedings," in which it "move[d] the Court to immediately order that the defendant be held in custody pending further proceedings in the Court of Appeals and in this Court, as required by 18 U.S.C. § 3143." See Motion for Detention at 1, ECF No. 156, Dkt. No. 17-CR-48 (E.D.N.Y. Aug. 23, 2021). In its motion, the government noted that because the mandate had yet to issue returning jurisdiction over the defendant's sentence to the district court, it was "not clear whether, in the current procedural posture, the defendant's detention is governed by [18 U.S.C.] § 3413(c), because she is subject to a sentence of imprisonment that has been appealed by the government, or by § 3143(a), because she is awaiting the imposition or execution of a sentence following remand from the Court of Appeals," but argued that regardless, "under either provision the result is the same: the statute requires the Court to order the defendant's detention." Id. at 2. The government noted that under Second Circuit case law, despite the pendency of the appeal, this Court "retain[ed] jurisdiction to order the defendant's detention." Id. (citing United States v. Hochevar, 214 F.3d 342, 344 (2d Cir. 2000) and United States v. Capanelli, No. 01 CR. 1121 (CSH), 2004 WL 1542247, at *4 (S.D.N.Y. July 9, 2004)). As part of its basis for the motion, the government's motion referred to new evidence that, notwithstanding the monthly status updates held by the court, the defendant had continued her pattern of violating the conditions of her supervision by seeking unsupervised access

4

to unauthorized electronic devices and accounts, and by regularly communicating with convicted felons without authorization, from at least December 2020 through August 16, 2021. See id. at 5-6. The defendant filed her own update letter under seal on August 23, 2021, which opposed the government's motion for an order of detention. See Def. Letter, ECF No. 157, Dkt. No. 17-CR-48 (E.D.N.Y. Aug. 23, 2021).

The next day, on August 24, 2021, the Probation Department submitted a supplemental violation of supervised release report which detailed extensive evidence provided by the FBI to the Probation Department that between November 2020 and July 2021, the defendant had repeatedly violated five conditions of her supervised release ("Second VOSR Report"). In the Second VOSR Report the Probation Department expressed concern that notwithstanding the defendant's guilty plea to committing the violations of supervised release conditions reported in the First VOSR Report "Ceasar is continuing to behave in a duplicitous fashion. Her conduct is extremely concerning as she continues to display a blatant disregard for the conditions set forth by this Court and is demonstrating a pattern of behavior that that is mirroring the behaviors from the instant offense." Second VOSR Report at 20. The Probation Department recommended "that Ceasar be remanded immediately." Id. at 22. The same day, August 24, 2021, the Court issued another order on the docket making clear that "All parties shall appear for a status conference by videoconference on August 25, 2021, at 9:00 am."

On the evening of August 24, 2021, after the government had moved the Court to immediately order the defendant's detention under 18 U.S.C. § 3143, and the Probation Department had reported that the defendant had committed new violations of the conditions of her supervised release and recommended she be remanded immediately, the defendant sent text messages to a friend that made clear she was fully aware of the government's motion for detention, the Probation Department's report regarding her violations of supervised release, and the Court's order requiring her appearance at the status conference the following morning. As more fully detailed in the government's October 15, 2024 Sentencing Memorandum, see Gov't Sent. Mem. at 55-56, ECF No. 223, Dkt. No. 17-CR-48 (E.D.N.Y. Oct. 15, 2024), the defendant sent text messages to a friend that made clear her knowledge that she was required to appear in Court at 9:00 a.m. on August 25, 2021 ("9am court,"), and that she believed that the Court was certain ("my legal team said its 1000 prison tomorrow," i.e., 1000%) to order that Ceasar be detained in custody at the status conference. In another text message, Ceasar referred to specific factual information detailed in the government's August 23, 2021 motion for detention and in the Second VOSR Report that made clear she was aware of the substance of the supervised release violations reported by the government and the Probation Department. See id. As more fully detailed in the government's sentencing memorandum, the defendant thereafter conspired with other prior convicted felons with whom she had become acquainted in transitional housing to plan her flight from the United States in an effort to evade what she viewed as both the certainty of her remand to custody and her eventual resentencing for the Material Support Offense and Obstruction Offense.

The next morning, on August 25, 2021, the defendant failed to appear as ordered by the Court, and, at the government's request, the Court issued a warrant for her arrest. See ECF Nos. 160, 161, Dkt. No. 17-CR-48 (E.D.N.Y. Aug. 25, 2021). On August 29, 2021, the government filed a letter notifying the Court that the defendant had been arrested in New Mexico

following a nationwide investigation, and renewing its request for the Court to issue an order of detention, see ECF No. 162, Dkt. No. 17-CR-48 (E.D.N.Y. Aug. 29, 2021), which the Court deferred until the defendant's return to the Eastern District of New York, see Minute Order, Dkt. No. 17-CR-48 (E.D.N.Y. Aug. 31, 2021).

On September 29, 2021, the Probation Department reported to the Court and the partes that the defendant had violated three conditions of her supervised release in connection with her flight to New Mexico ("Third VOSR Report").

On October 1, 2021, the defendant timely filed a petition for panel rehearing and rehearing before the Court of Appeals en banc. See United States v. Ceasar, No. 19-2881-cr(L), ECF No. 124 (2d Cir. Oct. 1, 2021). In her petition, Ceasar argued that the panel of the Court of Appeals that decided the government's appeal had erred in concluding that the government's appeal was timely filed, see id. at 7-9, and had erred under Gall v. United States, 552 U.S. 38 (2007), in assessing the reasonableness of the sentence imposed by Judge Weinstein, see id. at 10-16. The Court of Appeals denied the defendant's petition for panel rehearing and rehearing en banc on November 9, 2021. See United States v. Ceasar, No. 19-2881-cr(L), ECF No. 129 (2d Cir. Nov. 9, 2021). On November 10, 2021, the parties appeared for a status conference at which the Court entered a permanent order of detention and discussed scheduling a resentencing hearing. The defendant requested that the Court stay the defendant's resentencing pending a planned petition to the Supreme Court for a writ of certiorari. The Court ordered the parties to submit briefing on the question.

On November 16, 2021, the Court of Appeals issued the mandate returning jurisdiction over the defendant's sentence back to this Court. See MANDATE of USCA, ECF No. 171, Dkt. No. 17-CR-48 (E.D.N.Y. Nov. 16, 2021). On November 24, 2021, the defendant filed a letter requesting that the court hold the defendant's resentencing in abeyance for two reasons: to permit the Supreme Court to consider the defendant's planned petition for a writ of certiorari, and to permit the Court to first sentence the defendant for her violations of supervised release. See Def. Ltr., ECF No. 172 (E.D.N.Y. Nov. 24, 2021). The defendant argued that "[i]t would be impractical to prepare for resentencing before those violations have been adjudicated and the cert petition has been decided." Id. at 2. In the government's reply filed on December 8, 2021, the government noted it had no objection to proceeding to sentencing on the defendant's violations of supervised release before the Court resentenced the defendant for the Material Support Offense and Obstruction Offense, but objected to waiting for the Supreme Court's decision on the defendant's anticipated cert. petition to conduct the defendant's resentencing, noting that under the Supreme Court's standards the defendant's cert. petition was unlikely to be granted. See Gov't Ltr., ECF No. 173 (E.D.N.Y. Dec. 8, 2021).

The Court proceeded to arraign the defendant on the violations of supervised release reported in the Second VOSR Report and the Third VOSR Report on December 13, 2021, and the defendant filed a petition for writ of certiorari in the Supreme Court on February 7, 2022. In the months that followed, and as the parties reported in letters filed with the Court, the government produced discovery relating to the violations of supervised release and engaged in plea negotiations with defense counsel to resolve both the violations and the new criminal conduct the defendant had committed in connection with her attempt to flee the United States in August 2021. See, e.g., ECF No. 185, Dkt. No. 17-CR-48 (E.D.N.Y. July 11, 2022). The Supreme Court

denied the defendant's petition for a writ of certiorari on June 21, 2022.  See Ceasar v. United States, 142 S. Ct. 2841 (June 21, 2022).

   In an email exchange regarding plea negotiations that included both Ms. Von Dornum and Mr. Jacobson in September 2022, the government proposed to resolve the criminal investigation into the defendant's attempted flight from the United States, which revealed that the defendant had conspired with others and had destroyed evidence during her flight, by having the defendant waive indictment and plead guilty pursuant to a new plea agreement to an information charging a single count of failure to appear, in violation of 18 U.S.C. § 3146.  In an email to the government on September 6, 2022, Ms. Von Dornum stated:

> I also need to do some digging into the question of whether she was actually out on bail at the time of her flight (or just on supervised release) and somewhat relatedly whether as a technical matter she was on supervised release once her original sentence was vacated by CA2.

On September 14, 2022, the government followed up, asking whether defense counsel had come to ground regarding the proposed plea agreement.  Ms. Von Dornum responded the same day: "We are still digging in but it doesn't look like she was ever released on bail so as to trigger the bail jumping statute.  Let me know if you have a different view on that issue".  The government replied shortly thereafter, explaining that

> Fed. R. Crim. P. 32.1(a)(6) provides that at the defendant's initial appearance for violation of supervised release "The magistrate judge may release or detain the person under 18 U.S.C. §3143(a)(1) pending further proceedings."  Ceasar made her initial appearance before Judge Matsumoto on the VOSR on 11/20/2020 and was released.  Pursuant to Rule 32.1(a)(6) that release was "under 18 U.S.C. § 3143(a)(1)" which, as you know, is within Chapter 207, making Ceasar a person "released under this chapter" for purposes of 18 U.S.C. § 3146.

The government noted that, alternatively, the government could resolve the investigation by charging the defendant with obstruction of justice instead.  This exchange is attached as Exhibit 1 to this letter.

   On October 14, 2022, the defendant entered into a written agreement with the government to waive indictment and plead guilty to a one-count information charging her with failing to appear as required by the conditions of her release in 17-CR-48 and 19-CR-117.  See Information, ECF No. 6, Dkt. No. 22-CR-459 (E.D.N.Y. Oct. 14, 2022).  Also as part of the plea agreement, the defendant stipulated and agreed to allocute "that she committed the following violations of supervised release ('VOSR') as charged in the VOSR Reports dated August 24, 2021 ('VOSR Report 2') and September 29, 2021 ('VOSR Report 3'): Violations Four and Nine."  Oct. 14, 2022 Plea Agreement ¶ 1.  In Paragraph 6, "the defendant stipulate[d] and agree[d] that the defendant's violations set forth in paragraph 1 above and the defendant's Failure to Appear Offense constitute 'information relevant to sentencing' that was not known to the Office at the time of the Plea Agreement dated March 7, 2019."  Id. ¶ 6.

The defendant agreed to waive several rights as part of the plea agreement, including the right "to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence imposed for the Material Support Offense, Obstruction Offense or Failure to Appear Offense in the event that the Court imposes a total term of imprisonment of 386 months or below." Id. ¶ 5. The defendant also agreed to waive

> all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred as of February 13, 2017 in the event that (a) the defendant's convictions for any one or more of the Material Support Offense, Obstruction Offense or Failure to Appear Offense is later vacated for any reason, (b) the defendant violates this Agreement or the Plea Agreement dated March 7, 2019 (Dkt. No. 19-CR-117), or (c) the defendant's plea is later withdrawn.

Id. And the defendant further agreed to waive

> the right to raise on appeal or on collateral review any argument that (1) the Failure to Appear statute to which the defendant is pleading guilty, the Obstruction statute to which the defendant pleaded guilty on March 7, 2019, or the Material Support statute to which the defendant pleaded guilty on February 13, 2017 is unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes.

Id. However, the plea agreement made clear that "[n]othing in the foregoing waiver of appellate and collateral review rights shall preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum." Id.

> For its part, the government agreed that:

> no further criminal charges will be brought against the defendant for her failure to appear before the United States District Court for the Eastern District of New York for a scheduled court appearance at 9:00 a.m. on August 25, 2021, or for her destruction of records, electronic communications, and government property during and in connection with her flight from the Eastern District of New York between August 25, 2021 and her arrest in the District of New Mexico on August 27, 2021, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. § 1961 et seq.,

> and, based upon information now known to the Office, it will

> take no position concerning where within the Guidelines range determined by the Court the sentence should fall; and

> make no motion for an upward departure under the Sentencing Guidelines.

8

Id. ¶ 6. The Plea Agreement made clear however, that if it should be "judged by the Office that the defendant has violated any provision of this agreement, the defendant will not be released from her plea of guilty but this Office will be released from its obligations under this agreement, including the provisions of paragraph 6(a)." Id.

On October 14, 2022, the defendant appeared in person, waived indictment, and pleaded guilty, pursuant to the written plea agreement, to the Failure to Appear Offense. See Oct. 14, 2022 Failure to Appear Plea Tr. During the plea hearing, the Court first swore the defendant to tell the truth and confirmed she was competent to proceed before reviewing the information with the defendant, and confirming she understood the charges against her. After finding that she had knowingly waived indictment the Court next reviewed the terms of the October 14, 2022 Plea Agreement with the defendant. Before the defendant allocuted to the offense, the Court inquired of Mr. Jacobson where he knew of any reason why the defendant should not plead guilty to the information, and whether he was "aware of any viable legal defenses that are causing you to counsel Ms. Ceasar not to plead guilty to the information." Mr. Jacobson responded "No" to both questions. See Oct. 14, 2022 Failure to Appear Plea Tr. 26-27.

The defendant then pleaded guilty to the Failure to Appear Offense, and provided the following allocution:

> THE DEFENDANT: While my violations of supervised release were pending, I was released on supervision with electric -- sorry, electronic monitoring. I knew I had a court appearance scheduled for August 25th, 2021 in the Eastern District of New York. I removed my GPS monitoring device without permission from Probation or the Judge. I knowingly failed to appear in court as required.
>
> THE COURT: All right. So you knew that because of the prior violations of supervised release, you had been permitted to remain on release with certain conditions; is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you knew one of those conditions involved returning to court when ordered, correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you also knew that you were wearing a GPS device that would assist the Probation Department with monitoring your whereabouts, correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you knew that on August 25th, or approximately that date, you had a court date here in this courthouse; is that correct?
>
> THE DEFENDANT: Yes.

9

> THE COURT: Yet you decided to remove your bracelet, your anklet, and knowingly did not appear in court on the day as ordered; is that correct?
>
> THE DEFENDANT: Yes.

Oct. 14, 2022 Failure to Appear Plea Tr. 28-29. The Court found that there was a factual basis for the defendant's plea, that she had acted knowingly and voluntarily in entering the plea, and therefore accepted the defendant's guilty plea to the Failure to Appear Offense. See id. 30-31.

Following the defendant's guilty plea to the Failure to Appear Offense, the Court conducted a hearing to take the defendant's guilty plea, also pursuant to the October 14, 2022 Plea Agreement, to charge four of the Second VOSR Report, which reported that she had violated the conditions of her supervised release by downloading various applications to her cellular telephone and other electronic devices and accessing those applications without reporting them to the Probation Department, and charge nine of the Third VOSR Report, which reported that she had violated the conditions of her supervised release by removing her GPS monitoring bracelet without the approval of the Court or the Probation Department. At the change of plea hearing for the supervised release violations, the defendant agreed that she was pleading guilty pursuant to a written plea agreement with the government. See Tr. of VOSR Plea Hearing, dated Oct. 14, 2022, at 10-11. The Court found that there was a factual basis and accepted the plea. See id. at 24.

Before the sentencing hearing scheduled for December 12, 2024, the Probation Department submitted a memorandum to the Court on December 9, 2024, requesting that the Court "withdraw the VOSR in its entirety." Probation explained that

> It is the position of the Probation Department that due to the Second Circuit vacating the Judgment on the17cr48 (Material Support) and 19cr117 (Obstruction of Justice) cases, essentially nullifying the custodial and supervised release sentence, the violation of supervised release is void. The Probation Department defers to the Court as to the consideration of the conduct underlying the VOSR charges in the sentencing matters.

Dec. 9, 2024 Probation Mem. at 3.

In lieu of sentencing the defendant at the scheduled December 12, 2024 sentencing hearing, the Court directed the parties to file briefs addressing Probation's request and related questions that defense counsel raised in a letter requesting an adjournment the morning of the hearing.

II.     Discussion

   a.   The Probation Department's Attempt to "Withdraw" the Reports Alleging the Defendant's Violations of Supervised Release Should Be Denied

For the reasons below, the Probation Department's request to "withdraw" the supervised release violations should be denied. While the Second Circuit's vacatur of the term of supervision along with the rest of the judgment prevents this Court from revoking or modifying

that term of supervised release, the Second Circuit's decision did not find the supervised release term illegally imposed, and the violations of conditions of supervised release committed by the defendant were all committed while the judgment was in effect, and the defendant was bound to obey them.

> i. The Government Has Standing To Dispute Probation's Request To Withdraw The Violations of Supervised Release

As an initial matter, the Court should reject the defendant's suggestion that the government lacks "standing" in a criminal case that it initiated to object to the Probation Department's attempt to withdraw supervised release violations.

First, the Probation Department's duty is to report to the Court and the parties on the defendant's compliance with the conditions of her supervised release, not to exercise prosecutorial discretion whether to pursue the prosecution of those violations. Once the violations were reported to the Court and the parties in VOSR Reports filed by the Probation Department, they were prosecuted by the government and were resolved by agreements between the government and the defendant. The Probation Department did not prosecute the violations, nor was the Probation Department a party to the agreements that the government entered into with the defendant to resolve those violations.

Indeed, the duties of a Probation Officer are set forth by statute and do not include the duty or authority to prosecute or withdraw violations. Pursuant to Title 18, United States Code, Section 3603, a Probation Officer is statutorily charged with, among other things, instructing a person on supervised release as to the conditions imposed, keeping informed of the conduct of the person on supervised release, aiding the person to improve his or her condition or conduct, and reporting that conduct to the Court. See generally 18 U.S.C. §§ 3603(1) – (10). As relevant here, those duties include the obligation to "immediately report any violation of the conditions of release to the Court and the Attorney General or his designee." Id. at § 3603(8)(B). In other words, the Probation Officer is responsible for reporting to the Court and to the U.S. Attorney's Office any violation of supervised release, i.e., submitting a report describing the reasons for believing that the defendant the violation.

To the extent that the defendant and the Probation Department believe that the authority to report a violation necessarily includes the unilateral authority to withdraw that violation, it is notable that the Probation Department does not alone possess the authority to institute such violations. The U.S. Attorney's Office is also permitted "to petition the Court for revocation of a defendant's supervised release." United States v. Jennings, 652 F.3d 290, 299 (2d Cir. 2011) (citing cases). It would be anomalous for the Probation Department to be authorized to withdraw some, but not all, violations of supervised release, i.e., only those violations initially instituted by the Probation Department.

Nowhere in the statutory duties of a Probation Officer is either the authority to prosecute or withdraw the violations. That makes sense within the scheme of responsibility set out by statute because the Probation Department is not a prosecuting authority but instead an arm of the Court. See United States v. Inserra, 34 F.3d 83, 88 (2d Cir. 1994) (Probation is "a legally constituted arm of the judicial branch"). If the Probation Department learns of a violation by a

11

person subject to the Probation Department's supervision, the probation officer is duty-bound to report the violation to the Court. See Minnesota v. Murphy, 465 U.S. 420, 432 (1984) (a "probation officer is duty bound to report wrongdoing by the [probationer] when it comes to his attention"). Notably, when the Probation Department reports a violation to the Court, it is required by statute to report the violation to the Attorney General or his designee at the same time. That is so that the *executive* may prosecute the violation.

Thus, Federal Rule of Criminal Procedure 32.1, which governs revoking or modifying a term of supervised release, is replete with references to legal proceedings that strongly imply the participation of an attorney for the government—such as, an initial appearance before a magistrate judge, the determination of release or detention, a revocation hearing that includes the presentation of evidence and for which the parties are required to comply with Rule 26.2 concerning the prior statements of witnesses. See generally Fed. R. Crim. P. 32.1. None of those proceedings can be conducted without the involvement of the government. See, e.g., United States v. Chatelain, 360 F.3d 114, 122 (2d Cir. 2004) (noting the government's role in prosecuting violations of supervised release and encouraging the U.S. Attorney's Office to take responsibility for the filing of revocation petitions given that the Probation Department did not do so). The government does not need the Probation Department's concurrence in determining how to resolve a violation of supervised release once instituted, even though in practice the government routinely consults with the Probation Department to solicit the views of the probation officer, who generally has the most familiarity with the defendant from having supervised that defendant.

Given the government's extensive role in prosecuting and resolving violations of supervised release, including its sole authority to determine the appropriate resolution of the violations, it would be anomalous for the Probation Department to be authorized to undercut the government's authority merely by unilaterally withdrawing a violation over the objection of the government. Indeed, a statutory scheme where the Probation Department could undermine the government's authority to prosecute and resolve violations of supervised release merely by withdrawing those violations would raise significant separation of powers concerns. See Jennings, 652 F.3d at 300 (noting that the executive branch has the "exclusive authority and absolute discretion to decide whether to prosecute a case," citing United States v. Nixon, 418 U.S. 683, 693 (1974), and the judicial branch – which encompasses the Probation Department – may not exercise control over the executive branch's decision-making).

> ii. The Conduct Underlying The Violations of Supervised Release Can And Should Be Considered By The Court At Sentencing

The government is compelled to agree with the Fifth Circuit's decision in Lipscomb that this Court lacks the power to revoke a term of supervised release that has been vacated on appeal. See United States v. Lipscomb, 66 F.4th 604, 612 (5th Cir. 2023) ("The statutory framework and applicable precedent indicate that vacatur is warranted here. Lipscomb's revocation judgments were part of his ten-year sentence. That sentence was vacated. See Lipscomb, 2022 WL 327472, at *2. The revocation judgments are therefore legally void and should be vacated as well."). But the conclusion that this Court lacks the discretionary power to directly punish the violations of supervised release to which the defendant has admitted, does not imply any infirmity with the violations themselves that would support the Probation Department's request to "withdraw" the violations.

Notably, nothing in a Probation Officer's statutory duty to bring to the Court's attention a defendant's misconduct while under supervision depends on what the Court can or does decide to do about such violations. Under 18 U.S.C. § 3603(8)(B), a Probation Officer is obliged "immediately report any violation of the conditions of release to the court and the Attorney General or his designee," but this duty is not contingent on the Court's power to impose direct sanctions on the defendant under supervision. Rather 18 U.S.C. § 3583(e) provides that a court "may" revoke or modify a term of supervision if it finds that a defendant has violated the conditions of supervision. It follows that the determination that this Court lacks the power to directly punish Ceasar's violations by revoking her term of supervision does not affect the Probation Department's obligation to report those violations to the Court, and that Probation's request to withdraw reports of the defendant's violations actually committed by the defendant while she was bound to obey the conditions that she violated should be denied.

Indeed, the fact of the defendant's violations and the defendant's guilty plea to multiple such violations are highly relevant to the Court's sentencing determination for the underlying criminal convictions. The district court's underlying judgment was valid and the conditions of supervised release were binding upon the defendant at the times that she violated them. Those violations, as the government described in detail in its sentencing submission, included downloading and accessing on multiple occasions electronic applications without notification to the Probation Department, failing to provide account identifiers and passwords for those applications, and failing to notify the Probation Department of computers and other Internet-capable devices to which the defendant had access so that the Probation Department could monitor them, all as required by the terms and conditions of her supervised release. The defendant used those applications to contact known ISIS members and supporters, including some of those individuals with whom she had been in contact as part of her Material Support Offense. The defendant similarly had contact with known felons in violation of the terms and conditions of her supervised release. After contacting ISIS members and supporters and known felons, the defendant then deleted many of her communications with these individuals, as well as the underlying applications themselves, to prevent the Probation Department and the government from learning about her misconduct, similar to the conduct in which the defendant engaged in committing the Obstruction Offense for which she pleaded guilty. The fact that the defendant continued to engage in the same conduct for which she pleaded guilty following her sentence for those offenses is highly relevant to the Court's assessment of the Section 3553(a) factors upon re-sentencing.

The defendant argues in her in her letter filed on December 12, 2024, that the Court of Appeals' decision vacating the judgment in this case also "voided" the defendant's term of supervised released, a result that prevents this Court from considering the conduct underlying those violations at her resentencing. See Def. Ltr. of Dec. 12, 2024 at 1-2, ECF No. 233, Dkt. No. 17-CR-48 (E.D.N.Y. Dec. 12, 2024). This argument is without merit.

As an initial matter, the law is clear that "[w]hile a district court cannot sentence a defendant to more severe punishment than that prescribed for the crimes of conviction, '[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence' within the prescribed range." United States

13

v. Broxmeyer, 699 F.3d 265, 268 (2d Cir. 2012) (quoting 18 U.S.C. § 3661). This venerable principle of sentencing law is not only codified in statute, but in decades of Supreme Court decisions. See id. at 268-69 (quoting Williams v. New York, 337 U.S. 241, 247 (1949) (recognizing that sentencing judge is "not confined to the narrow issue of guilt" in determining punishment, but must act on "the fullest information possible concerning the defendant's life and characteristics"), and citing Pepper v. United States, 562 U.S. 476, 487-88 (2011); Witte v. United States, 515 U.S. 389, 397–98 (1995); and Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993).

Indeed, it is precisely this principle that the Supreme Court relied upon in Pepper, a decision that post-dates the Second Circuit decision relied upon by the defendant, see United States v. Thomas, 135 F.3d 873 (2d Cir. 1998), to hold that that "when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing." Pepper, 562 U.S. at 490 (2011). Following Pepper, in Concepcion v. United States, the Supreme Court approved of sentencing courts considering both evidence of rehabilitation as well as "evidence of violence and rule breaking in prison," reiterating that "[w]hen a defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." Concepcion v. United States, 597 U.S. 481, 486, 493 (2022).

As the government has argued repeatedly over the last four years, and at length in its sentencing memorandum, there is little doubt here that the defendant's misconduct while on supervised release is directly relevant to the sentence that this Court will impose upon resentencing. The defendant however relies on the Second Circuit's decision in Thomas for the proposition that this Court must ignore the defendant's unbroken pattern of misconduct while under court supervision because the Court of Appeals vacated the judgment that contained her term of supervised release when it remanded the case to this Court to impose a harsher sentence. Thomas was a case in which the Court of Appeals attempted to correct a chain of compounded errors that resulted in the district court imposing "at least five illegal sentences in this case." Thomas, 135 F.3d at 874. Those illegally imposed sentences included the defendant's sentence to a term of probation, which the district court then illegally revoked when the defendant violated her term of probation by cutting her location monitoring bracelet. See id. at 876 ("It follows that there could be no violation of the probation that was illegally imposed by these now-void sentences. As a result, the sentence based on the revocation of that probation must also be vacated."). To correct this chain of compounded error, the Court of Appeals specifically directed the district court on resentencing the defendant to ignore the defendant's violations of the unlawfully imposed term of probation. See id. at 876 (expressing a desire to "wip[e] the record clean").

Thomas's command that the district court blind itself to the defendant's violation of the term of probation is best understood as a product of that case's specific facts, and the appellate panel's desire to craft a remedy that would be meaningful in that case. But see Concepcion, 597 U.S. at 494 ("The only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution.").

Ceasar's case, by contrast, is worlds removed from Thomas. No party has ever questioned the legality of the term of supervision imposed by Judge Weinstein, or that Ceasar was bound to obey the conditions of that term of supervision before it was vacated together with the

rest of the judgment as a result of the government's appeal challenging the length of the defendant's term of imprisonment. And each of the violations of the defendant's term of supervised release that she has admitted to were committed by the defendant while she was bound by the conditions she disobeyed. Accordingly, in light of the clear law that this Court can and should consider the defendant's post-sentencing conduct at resentencing, nothing in Thomas should be understood to prevent this Court from considering Ceasar's violations of the conditions of her term of supervision.

### b. The Defendant's Conviction of the Failure to Appear Offense Remains Valid

Finally, there is no basis to call into question the validity of the defendant's conviction of the Failure to Appear Offense. Under Fed. R. Crim. P. 32.1(a)(6), the defendant's release following her arraignment for her violations of supervised release on November 20, 2020 was necessarily a release under 18 U.S.C. § 3143. And when the defendant subsequently failed to appear at a status conference scheduled to address her violations of supervised release, she was thus a person "released under [Chapter 207 of Title 18 of the United States Code]." 18 U.S.C. § 3146. Nothing in 18 U.S.C. § 3146, requires the district court conducting an initial appearance under Rule 32.1 to use any particular combination of magic words to invoke the provisions of § 3143, rather Rule 32.1(a)(6) provides that any release under such circumstances is a release under the Bail Reform Act.

Moreover, in her plea allocution on October 14, 2022, the defendant confirmed that she knew that she was required to appear before the Court on August 25, 2021, and she chose not to. And in the October 14, 2022 Plea Agreement the defendant affirmatively waived, among other rights, the right to argue that "the admitted conduct does not fall within the scope of the statutes." Notably, in negotiating the plea for the Failure to Appear Offense, the parties discussed a potential argument relating to the same concern the defendant raised in her December 12, 2024 letter and nevertheless the defendant chose to plead guilty to that offense, thereby waiving the argument she now makes.

Were the defendant to now seek to withdraw her guilty plea, the defendant would breach the plea agreement and, among other things, face prosecution on other charges that the government could have brought in addition to the Failure to Appear Offense, including among other offenses conspiracy, obstruction of justice, and the destruction of government property.

### III.  Conclusion

Accordingly, the government respectfully submits that the Court should (1) cancel the VOSR sentencing hearing because the Court lacks the authority to revoke or modify the defendant's term of supervised release following the Second Circuit's decision vacating the judgment in which it was contained, (2) deny the Probation Department's request to withdraw the VOSR reports in this case and consider the conduct described therein at the defendant's

resentencing as relevant conduct, and (3) proceed to a single consolidated sentencing for the Material Support Offense, Obstruction Offense, and Failure to Appear Offense.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/_____
Douglas M. Pravda
Assistant U.S. Attorney

Ian C. Richardson
Special Assistant U.S. Attorney
(718) 254-7000

cc:    Clerk of Court (KAM) (by ECF)
       Deirdre D. von Dornum, Esq. and Samuel Jacobson, Esq. (by Email and ECF)

16