UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,

    - against -

SINMYAH AMERA CEASAR,

             Defendant.

------------------------------------X

**MEMORANDUM AND ORDER**

No. 17-cr-48 / 19-cr-117 /
22-cr-459 (KAM)

**Kiyo A. Matsumoto, United States District Judge:**

    Presently before the Court are letters from the Government, the Probation Department (ECF Nos. 229, 235, 237-238, 240, and 243)[1], and Defendant Sinmyah Amera Ceasar (ECF Nos. 236, 239, and 242) regarding various legal issues raised on the eve of a consolidated sentencing then scheduled for December 12, 2024. On that date, Ms. Ceasar was to be (1) resentenced following the Second Circuit's August 18, 2021 decision vacating the judgment on two prior convictions imposed by the Honorable Jack B. Weinstein on June 26, 2019, (2) sentenced in the first instance on a third conviction, and (3) sentenced on four violations of supervised release. The consolidated sentencing was adjourned *sine die* at the request of the parties to make further submissions on specific

---

[1] Unless otherwise noted, ECF citations refer to Docket 17-cr-48.

legal issues. The Court addresses each issue below.

<u>**BACKGROUND**</u>

This case has an extensive history and record. The Court recounts only the facts necessary to resolve the present issues regarding sentencing.

In a consolidated sentencing in Dockets 17-cr-48 and 19-cr-117, on June 24-26, 2019, following Ms. Ceasar's guilty pleas, Judge Weinstein sentenced Ms. Ceasar to a total of 48 months: 46 months for Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B (Docket 17-cr-48), and a consecutive sentence of 2 months for Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(1) (Docket 19-cr-117); the latter two-month sentence was apportioned as one month for the Obstruction offense, and one month pursuant to 18 U.S.C. § 3147, because Ms. Ceasar committed the second offense while on bail. (ECF No. 117, Amended Judgment.) Ms. Ceasar was sentenced to eight years of supervised release on the Material Support offense and three years of supervised release on the Obstruction offense, to run concurrently. (*Id.*) The Government appealed only Judge Weinstein's 48-month incarceral sentence. (ECF No. 119.)

On April 21, 2020, while Ms. Ceasar was still in custody, Docket 19-cr-117 was reassigned to this Court. On July 29, 2020, just after Ms. Ceasar began her eight-year term of supervised

release, Docket 17-cr-48 was also reassigned to this Court. According to Probation, Ms. Ceasen began violating her conditions of supervised release soon after her term began. The first Violation of Supervised Release ("VOSR") Report notes that Ms. Ceasar began violating her conditions of release as early as August 13, 2020, and charges that Ms. Ceasar failed to comply with the conditions that she report to the Probation Department any electronic communications service accounts, that she provide Probation with account identifiers and passwords, and that she not associate with any persons convicted of a felony. (*See* ECF No. 129 at 8-9.) In total, while Ms. Ceasar was serving her terms of supervised release, she was charged with 11 violations, and she ultimately pleaded guilty to four violations: Charges 1, 3, 4, and 9. (ECF Nos. 129, 133, 158, 166, and 195.)

Charge 1 concerned a violation of the condition to report to Probation any electronic communications service accounts and charged Ms. Ceasar with downloading and accessing unreported applications and accounts to her mobile phone. (ECF No. 129 at 8.) Charge 3 concerned a violation of the condition that Ms. Ceasar not associate with any persons convicted of a felony and charged Ms. Ceasar with corresponding with individuals known to have felony convictions. (*Id.* at 9.) Charge 4 concerned another violation of the condition that Ms. Ceasar report to Probation any electronic communications service accounts and charged Ms. Ceasar with

3

downloading and accessing unreported applications and accounts to her mobile phone and other internet-capable devices. (ECF No. 158 at 2.) Charge 9 concerned a violation of the condition that Ms. Ceasar agree to location monitoring and charged Ms. Ceasar with removing her GPS monitoring bracelet without approval of the Court or Probation. (ECF No. 166 at 3-4.) Ms. Ceasar was permitted to remain under supervision, under the continuing conditions of her supervised release, pending sentencing on the four violations and disposition of the remaining violations.

On August 18, 2021, two years after Ms. Ceasar's sentencing by Judge Weinstein, the Second Circuit vacated the 48-month sentence as substantively unreasonable and remanded for resentencing consistent with 18 U.S.C. § 3553(a). *United States v. Ceasar*, 10 F.4th 66 (2d Cir. 2021). On the same day, this Court issued an order reminding the parties of a status conference already scheduled for August 25, 2021, and inviting the parties to update the Court regarding contemplated next steps for resentencing in light of the Second Circuit's decision. (August 18, 2021 Order.)

On August 25, 2021, instead of appearing before the Court as ordered to schedule her resentencing, Ms. Ceasar removed her ankle bracelet and fled the jurisdiction. She was apprehended in New Mexico on August 27, 2021, and remanded to custody shortly after her return to the Eastern District of New York.

4

Ms. Ceasar was charged by information with a violation of 18 U.S.C. § 3146 for Failure to Appear for the August 25, 2021 status conference, and she pleaded guilty to the information on October 14, 2022, in Docket 22-cr-459. The Court then scheduled Ms. Ceasar's resentencing on her Material Support and Obstruction charges and sentencing on her Failure to Appear charge for February 9, 2023. After granting Ms. Ceasar numerous adjournments, Ms. Ceasar was scheduled for resentencing on the Material Support and Obstruction offenses, and sentencing for the Failure to Appear charge, on December 12, 2024.

Days before the scheduled consolidated sentencing, on December 9, 2024, Probation requested to withdraw all of the violations of supervised release in their entirety, noting that the Second Circuit vacated the judgment and "essentially nullif[ied] the custodial and supervised release sentence," so therefore, "the violation[s] of supervised release [are] void." (ECF No. 229 ("Prob. Ltr.") at 3.) The sentencing on December 12, 2024, was converted to a status conference, where the parties then raised various legal issues relating to Probation's request to withdraw the violations, including whether the Court may sentence Ms. Ceasar on the supervised release violations, the Government's standing to object to the withdrawal of the violations, the extent to which the Court may consider Ms. Ceasar's conduct while on supervised release during a resentencing, and whether Ms. Ceasar

may withdraw her guilty plea to the Failure to Appear offense.

The Court ordered briefing on these issues. In sum, the parties and Probation filed: Probation's initial letter requesting withdrawal of the VOSRs (Prob. Ltr.); the Government's first letter dated December 27, 2024 (ECF No. 235 ("Gov't Ltr.")); the Defendant's first letter dated December 28, 2024 (ECF No. 236 ("Def. Ltr.")); Probation's response to the Government's opposition to withdrawal of the VOSRs dated January 10, 2025 (ECF No. 237 ("Prob. Resp.")); the Government's response dated January 11, 2025 (ECF No. 238 ("Gov't Resp.")); the Defendant's response dated January 11, 2025 (ECF No. 239 ("Def. Resp.")); the Government's reply dated January 18, 2025 (ECF No. 240 ("Gov't Reply")); the Defendant's first supplemental letter dated January 29, 2025 (ECF No. 242 ("Def. Supp.")); and the Government's first supplemental response dated February 5, 2025 (ECF No. 243 ("Gov't Supp. Resp.")).

## **DISCUSSION**

As an initial matter, the parties, Probation, and the Court agree that sentencing on the supervised release violations should not occur because the Court cannot revoke or impose a sentence on violations of a supervised release term that was vacated on appeal. (Gov't Ltr. at 1; Def. Ltr. at 2; Prob. Ltr.) The Court finds the reasoning in *United States v. Lipscomb*, 66 F.4th 604 (5th Cir. 2023), cited by both parties, persuasive and agrees that, following

vacatur of the judgment imposing supervised release, the Court cannot sentence Ms. Ceasar on the VOSR charges because the Court cannot revoke a supervised release term that was vacated on appeal. *See id.* at 612 ("Lipscomb's revocation judgments were part of his ten-year sentence. That sentence was vacated. The revocation judgments are therefore legally void and should be vacated as well." (internal citation omitted)). Accordingly, the Court will not sentence Ms. Ceasar on VOSR Charges 1, 3, 4, and 9, to which she pleaded guilty.

The Court next addresses the remaining legal issues. The parties present four issues concerning: (1) the Government's standing to object to Probation's request to withdraw Ms. Ceasar's VOSR reports; (2) Probation's request to withdraw the VOSR reports, and Ms. Ceasar's arguments that the violations should be dismissed; (3) the Court's ability to consider conduct relating to the supervised release violations at sentencing, even though the Court will not sentence Ms. Ceasar on such violations; and (4) whether Ms. Ceasar should be permitted to withdraw her guilty plea in the 22-cr-459 Docket for the Failure to Appear charge under 18 U.S.C. § 3146 because the plea "lack[s] a factual basis." (Def. Ltr. at 5.)

The Court addresses each in turn.

I.  **GOVERNMENT'S STANDING TO OBJECT TO PROBATION'S REQUEST TO WITHDRAW VOSRS**

Probation has requested to withdraw the VOSRs in the 17-cr-48 (Material Support) and 19-cr-117 (Obstruction of Justice) Dockets, noting that because the Second Circuit vacated the judgment imposing the supervised release, the "violation of supervised release is void." (Prob. Ltr. at 3.) The Probation Department defers to the Court whether the reported conduct in its reports should be considered at sentencing. (*Id.*) The Government objects to Probation's request to withdraw the VOSRs. (Govt. Ltr. at 10.)

Defense counsel asserts that the Government lacks standing to challenge the requested withdrawal because it does not decide whether violations may be dismissed; because revocation proceedings are not criminal proceedings but are instead the Court's exercise of its sentencing authority; and because, notwithstanding the Government's authority to petition the Court directly for revocation, here, the Government did not so petition and thus lacks standing to contest the requested withdrawal. (Def. Ltr. at 1-2; Def. Resp. at 2.)

As explained below, because the criminal code, rules, Guidelines, and case law authorize the Government's procedural and substantive roles in supervising defendants and in revocation proceedings, and, as ordered by Judge Weinstein, based on the

8

specific involvement of the FBI and the Government in assisting Probation with supervising Ms. Ceasar, the Government has standing to object to Probation's request to withdraw its VOSRs, notwithstanding that the Government did not itself initiate Ms. Ceasar's revocation proceedings.

First, as the Defense acknowledges, the Government has authority to petition the Court for revocation. *See United States v. Jennings*, 652 F.3d 290, 300 (2d Cir. 2011) (agreeing with district court that "USAO is permitted to petition the Court for revocation of a defendant's supervised release"); (Def. Resp. at 2). Here, although the Government did not initiate revocation proceedings, it had the authority to do so.

Second, it is indisputable that the Government participates in the process of revoking or modifying supervised release terms, conducting hearings, and participating in pleas and sentencings. The Court agrees with the Government that Federal Rule of Criminal Procedure 32.1 ("Rule 32.1"), which governs revocation or modification of supervised release terms, strongly implies the Government's participation, (*see* Gov't Ltr. at 12), and some subsections specifically reference the role of "an attorney for the Government," Rule 32.1(c)(2)(C). Moreover, Advisory Committee Notes for the 1993 amendments to Rule 32.1 specifically acknowledge that "[i]n the case of revocation or modification of probation or supervised release proceedings, not only is the defendant's

9

liberty interest at stake, the Government has a stake in protecting the interests of the community."

Further, because Judge Weinstein specifically authorized Probation to share information with the FBI during Ms. Ceasar's supervised release, including the monitoring of her electronic devices and accounts, so that the FBI could assist Probation in assessing and ensuring her compliance with her supervised release conditions, the Government's active role in Ms. Ceasar's supervised release is not in dispute. The Government notes that Probation "explicitly relied on information" obtained and provided by the Government and FBI when reporting the violations in the Second and Third VOSR Reports, which included information the FBI obtained through witness interviews and search warrants. (Gov't. Resp. at 2.) The Government further notes that "Judge Weinstein imposed conditions of supervision that explicitly authorized Probation to share with the FBI information obtained from monitoring of [Ms. Ceasar's] electronic devices and accounts 'in order for the FBI to assist the Probation Department in evaluating such information as part of assessing Defendant's compliance with the terms of her supervision.'" (Gov't. Resp. at 2 (quoting ECF No. 117, Amended Judgment at 7-8).) The Government's active role assisting in the supervision of Ms. Ceasar and developing evidence of violations further supports the Government's standing to object to Probation's request to withdraw reports related to that same

10

conduct.

Finally, statutory authority outlining duties of probation officers further contemplates the Government's role alongside Probation in certain instances: Title 18 U.S.C. § 3603(8)(B) provides that Probation is to "immediately report any violation of the conditions of release to the court and the Attorney General or his designee" in certain cases. The Court respectfully disagrees with the Government that § 3603(8)(B) requires Probation to immediately report *all* violations to the Attorney General, (*see* Gov't. Ltr. at 11)[2], but nonetheless, § 3603(8)(B) is another example of the Government's role in supervised release violations.

That two co-equal branches of Government, the Department of Justice on behalf of the Executive Branch, and Probation on behalf of the Judiciary share substantive and procedural roles in supervising defendants and in revocation proceedings establishes the Government's standing to object to withdrawing reports related to revocation proceedings.

Importantly, neither Defense counsel nor Probation cites a single case holding that the Government affirmatively lacks

---

[2] *See United States v. Jennings*, 652 F.3d 290, 302–03 (2d Cir. 2011) ("In § 3603, only subpart (B) of subsection (8) states any requirement of 'immedia[cy].' If Congress had intended to require immediacy with respect to every report of a supervised-release violation by any supervisee, we would have expected that requirement to be set out in each subsection requiring a report or in a subsection of its own, rather than as a subpart of one subsection....We see no indication that subpart (B) of subsection (8)...was intended to apply to other subsections of § 3603.").

standing to object to the request to withdraw a VOSR report. Nor does the Court find that the transcript from a recent conference before Judge Richard J. Sullivan, (cited in Defense counsel's letter (ECF No. 236)), supports the defense that the Government lacks standing to object to Probation's request. When Judge Sullivan admonished the Government that "you don't drive the train...on what the [VOSR] specifications are and what specifications get dismissed," he appeared to reference and reinforce the *Court's* role in VOSR proceedings, including making findings regarding the violations, accepting or rejecting pleas, and sentencing. (ECF No. 236-1 at 13:20-14:5.) Indeed, Defense counsel's letter excludes Judge Sullivan's comments specifically stating the Government is "obviously[] an interested party too." (*Id.*)

The Court finds that the Government is authorized to be substantively and procedurally involved in supervising defendants and in revocation proceedings. Moreover, the Government's court-ordered involvement assisting Probation with supervising Ms. Ceasar also provides the Government the standing to object to the Probation Department's request to withdraw reports concerning her supervision. Notwithstanding that the Government did not initiate revocation proceedings, it has standing to object to the withdrawal of violation reports that are based in part on information the Government itself provided to Probation.

## II.   PROBATION'S REQUEST TO WITHDRAW THE VOSR REPORTS

The parties and Probation agree that the Court cannot sentence Ms. Ceasar for the violations of supervised release to which she pleaded guilty. Although the parties further agree that the Court has authority to decide whether to grant withdrawal or dismissal of the charges, Probation defers to the Court's authority to consider the conduct. Indeed, Probation notes that, as "an arm of the Court," Probation "cannot unilaterally order a withdrawal of violation charges" and "only the Court can determine if [the VOSR charges] can be upheld, withdrawn, or dismissed." (Prob. Resp. at 2); *see also United States v. Bermudez-Plaza*, 221 F.3d 231, 234 (1st Cir. 2000) ("[I]t is the court and the court alone that ultimately decides whether or not revocation proceedings shall be initiated and, if initiated, what consequences will befall the individual who has violated his conditions of release.").

Both the Defendant and Probation argue that vacatur of the judgment on appeal rendered Ms. Ceasar's supervised release a "legal nullity," despite the fact that neither the Defendant nor the Government appealed Ms. Ceasar's supervised release, and the Second Circuit's decision did not discuss it. Thus, unlike other cases, the Second Circuit did not find that the supervised release term was unlawfully imposed or otherwise legally infirm. (*See* Def. Ltr. at 2; Prob. Ltr. at 2); *see generally Ceasar*, 10 F.4th 66; *United States v. Thomas*, 135 F.3d 873 (2d Cir. 1998). Probation

requests to withdraw the VOSR reports but defers to the Court whether the information in the reports may be considered at sentencing and notes that the Government could provide evidence of the Defendant's conduct since her release from custody. (*See* Prob. Resp. at 2.) Defendant asserts that it would be improper to leave the violations "dangling unsentenced in perpetuity." (Def. Ltr. at 2; Def. Resp. at 1-2.) The Government contends that even if the Court cannot directly sentence Ms. Ceasar for the violations, that "does not imply any infirmity with the violations themselves" to support withdrawing the reports. (Gov't Ltr. at 12.) The Probation Department agrees with the Government that the Second Circuit's decision did not negate the conduct reported in the violation reports because the conduct still occurred. (Prob. Resp. at 2.)

As noted, the Court cannot and will not sentence Ms. Ceasar on the violations because they arise from a supervised release term included in a vacated judgment. Even if vacatur legally voided the supervised release term and nullified the violations, however, the Court finds no legal basis to grant the request to withdraw the VOSR reports.

Although Ms. Ceasar argues that her conduct during supervised release "should not bear on the punishment to be imposed for her criminal convictions," as will be discussed below, Defense counsel admits there is "no limit on the information the Court can consider at sentencing." (Def. Ltr. at 3 (citing 18 U.S.C. § 3661).)

14

Moreover, given the close and cooperative efforts between the Probation Department and the Government during Ms. Ceasar's supervised release, the Government's sentencing submission may properly include information that it obtained from the FBI and Probation, and the information provided by the Government and the FBI to Probation. Here, the Probation Department's reports to the Court contain information advising of Ms. Ceasar's conduct, whether for informational purposes or for supporting violation charges. Thus, although the Court will not *sentence* Ms. Ceasar for the conduct reported in the Probation Department's reports, the Court may consider it. *See United States v. Saliba*, No. 08-cv-792 (DLI) (RML), 2015 WL 997982, at *6 (E.D.N.Y. Mar. 5, 2015) (noting a VOSR report is "not a charging instrument, but rather is a report"). Indeed, Probation maintains that withdrawing or dismissing the violations would "not necessarily negate that the conduct occurred, it simply removes the Probation Department's report of the conduct[.]" (Prob. Resp. at 2.)

It appears that the defense's argument to withdraw the VOSRs, erase, and preclude consideration of Ms. Ceasar's post-release conduct would unduly fetter the Court's responsibility to consider the factors set forth at 18 U.S.C. § 3553(a), and information regarding the Defendant's background, character, and conduct pursuant to 18 U.S.C. § 3661, in determining her sentence. Although Ms. Ceasar will not be sentenced on her guilty plea to four

15

violations of supervised release, cases cited by Ms. Ceasar do not support her argument that vacatur of a judgment containing a supervised release term requires the Court to ignore relevant information. As the Government correctly notes, "nothing in *Lipscomb* stands for the proposition that a sentencing court must pretend in a future sentencing proceeding that a defendant's past violations of supervised release did not happen just because the sentence which included the term of supervised release was later vacated." (Gov't. Resp. at 3); s*ee Lipscomb*, 66 F.4th at 612.

Moreover, Ms. Ceasar's argument that not withdrawing the VOSR reports leaves her in a "permanently unadjudicated state, denying her finality" is unavailing. (Def. Resp. at 2.) Probation often provides informational reports to the Court to report on the activities of a defendant under supervision. The Reports need not request judicial action but are intended to advise the Court of the defendant's post-release conduct. It is neither improper nor unusual to leave reports of violations unsentenced. Probation regularly files informational reports regarding violations but may recommend no further action. A VOSR report does not require adjudication of charges. *See United States v. Amatel*, 346 F.3d 278, 280 (2d Cir. 2003) (affirming district court that concluded that "the challenged instruments [of reports of potential violations] were not so much accusatory instruments as reports, by which 'a probation officer conveys information about the defendant

16

to the sentencing court'"); *Saliba*, No. 08-cv-792 (DLI) (RML), 2015 WL 997982, at *6 (noting VOSR report is "not a charging instrument, but rather is a report"); (Gov't Reply at 3).

Accordingly, the request to withdraw the VOSR reports is denied, and the Court will deem the reports to serve an informational purpose. The Court is permitted to consider the conduct outlined in the reports under 18 U.S.C. § 3661 in determining Ms. Ceasar's sentences on the statutory violations. As noted, the Court will not sentence Ms. Ceasar on the VOSR charges to which she has pleaded guilty, and the Court orders that the VOSR Reports be treated as informational Reports on Person Under Supervision and orders that no action will be taken on such reports.

## III. CONSIDERING CONDUCT WHILE ON SUPERVISED RELEASE AT SENTENCING

Ms. Ceasar concedes that "[t]here is no limit on the information the Court can consider at sentencing" but argues that "once the Circuit vacated the judgment the violation of supervised release could not be considered in its resentencing, because it was not in itself illegal." (Def. Ltr. at 3.) Probation defers to the Court for what constitutes relevant factors in rendering an appropriate sentence and notes that if the reports are withdrawn, then "[i]f the Government wishes to include the conduct that occurred during Ceasar's thirteen months at liberty at sentencing, the Government could provide sufficient evidence that the conduct

occurred and request that the Court consider it." (Prob. Resp. at 2.) The Government argues that Ms. Ceasar's conduct while on supervised release is highly relevant to her sentencing, and that it may present such evidence in its sentencing submission. (Gov't Ltr. at 12-13.)

The Court can and must consider Ms. Ceasar's conduct during her supervised release term in determining her sentences. It is axiomatic that the Court has discretion to consider relevant information at sentencing. *See Concepcion v. United States*, 597 U.S. 481, 494 (2022) (noting "[t]he only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution"). "In 1970, Congress codified the 'longstanding principle that sentencing courts have broad discretion to consider various kinds of information' at 18 U.S.C. § 3577," which it later "recodified...without change at [18 U.S.C.] § 3661." *Pepper v. United States*, 562 U.S. 476, 488-89 (2011) (citation omitted). Title 18 U.S.C. § 3661 states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Ms. Ceasar argues, however, that the Court should not consider

18

her conduct during her vacated supervised release term in determining her sentence because her conduct is "not in itself illegal" or unlawful, "and would not have caused concern had she not been on supervised release." (Def. Ltr. at 2-3.) Therefore, she posits, conduct during her supervised release term "should not bear on the punishment to be imposed for her criminal convictions, but instead help to inform what conditions are most likely to rehabilitate her when she finishes her term of imprisonment." (*Id.* at 3.)

Ms. Ceasar's arguments are unavailing. First, the Supreme Court has "recognized that 'the broad language of § 3661' does not provide 'any basis for the courts to invent a blanket prohibition against considering certain types of evidence at sentencing.'" *Pepper*, 562 U.S. at 491 (citation omitted). Importantly, *Pepper* instructs that "[t]he plain language of § 3661 makes no distinction between a defendant's initial sentencing and a subsequent resentencing after a prior sentence has been set aside on appeal." *Id*.

Second, courts can consider pre- and post-sentencing conduct, including conduct pending re-sentencing, whether favorable or unfavorable to defendants. The plain text of § 3661 does not restrict courts from considering only conduct that relates to the conviction, because § 3661 specifically permits courts to consider information "concerning the background, character, and conduct" of

defendants. Significantly, in *Concepcion v. United States*, the Supreme Court expressly noted that "federal courts resentencing individuals whose sentences were vacated on appeal regularly consider evidence of rehabilitation developed after the initial sentencing," and also "frequently consider evidence of violence and rule breaking in prison" in resentencing proceedings. 597 U.S. at 493 (collecting cases).

Further, the *Pepper* Court expressly rejected the argument that the post-sentencing conduct that a Court may consider at resentencing turns on whether the conduct is favorable or unfavorable to the defendant. Specifically, the *Pepper* Court rebuffed the lower court's logic that post-sentence rehabilitation would not be relevant at resentencing because the district court could not have considered that evidence at the original sentencing. *See* 562 U.S. at 504. The Court noted that such logic would improperly "require sentencing courts categorically to ignore not only postsentencing rehabilitation, but *any* postsentencing information, including, for example, evidence that a defendant had committed postsentencing offenses," because "[o]ur precedents...provide no basis to support such a categorical bar." *Id.* (emphasis in original); *see also United States v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994) (noting that "when determining sentence, a sentencing court is free to consider hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and

20

criminal activity resulting in acquittal").

Third, even assuming Ms. Ceasar's conduct may not in itself be deemed illegal or a violation absent the now-vacated supervised release term, the Court is not required to ignore the conduct nor is the Court restricted from considering the conduct at resentencing. The sentencing factors at 18 U.S.C. § 3553(a) specifically require that the Court consider, *inter alia*, Ms. Ceasar's "history and characteristics," and the "need for the sentence imposed...to reflect the seriousness of the offense, to promote respect for the law, [] to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1), (2).

Just as the *Pepper* Court held that "evidence of postsentencing rehabilitation[] may be highly relevant to several of the § 3553(a) factors," including that it "may plainly be relevant to 'the history and characteristics of the defendant,'" 562 U.S. at 491 (citing § 3553(a)(1)), so too is Ms. Ceasar's post-sentencing conduct relevant to the § 3553(a) factors, regardless of whether the conduct involves criminal liability or bears on rehabilitation.

Further, the Court cannot agree with Ms. Ceasar's argument

that her conduct would otherwise "not have caused concern had she not been on supervised release." (Def. Ltr. at 3.) "[C]ourts may consider uncharged conduct at sentencing, provided [] that such conduct is proven by a preponderance of the evidence and relevant to the broad objectives of sentencing." *United States v. Pettway*, No. 20-63, 2021 WL 4188716, at *4 (2d Cir. Sept. 15, 2021). Here, Ms. Ceasar's conduct following her release after she served her original incarceratory sentence is highly relevant to consideration of the § 3553(a) factors because much of her conduct mirrored the same conduct for which she pleaded guilty in the Material Support and Obstruction cases——the focus of the resentencing. For example, the Government notes in its sentencing submission that during Ms. Ceasar's term of supervised release, she "used the [IslamicFinder] application to connect with an apparent ISIS supporter located in a different country and obtain money from him, while actively misleading her probation officer about the identity and her relationship with the person who was the source of the funds." (ECF No. 223 ("Gov't Sentencing Mem.") at 29.) Further, the Government notes that following her release, Ms. Ceasar downloaded and used applications to contact known ISIS members and supporters with whom she had been in contact as part of her Material Support Offense. (*See* Gov't. Ltr. at 13.) Further, after contacting ISIS members and supporters, she deleted many of her communications with these individuals, along with the

underlying applications, to prevent Probation and the Government from detecting them; this conduct is similar to the conduct underlying Ms. Ceasar's Obstruction Offense, to which she pleaded guilty. (*See id.*)

Ms. Ceasar does not deny her outreaches to ISIS sympathizers after her release from her original incarceration but denies she has returned to holding ISIS's views. (Def. Ltr. at 4 n.4.) Her denial, however, does not render the conduct less relevant under § 3553(a), and in fact, coupled with her outreach to ISIS supporters and her use of terms and words used by ISIS supporters, her conduct presents concerns about her deterrence, respect for the law, and rehabilitation. (*See, e.g.*, Gov't Sentencing Mem. at 23, 30 (noting that following her release in July 2020, Ms. Ceasar "re-contacted at least one individual she previously identified as a supporter of Islamic extremism and then attempted to cover-up that contact," "received money from a foreign-based individual who admitted to supporting ISIS, and sought to conceal her communications with this individual," and "used the derogatory term 'kufaar' to refer to non-Muslims which...she repeatedly used while committing her Material Support Offense in 2016").) Therefore, regardless of whether Ms. Ceasar was on supervised release, and regardless of her current views, her conduct is concerning and may be considered by the Court.

Further, conduct like repeatedly downloading applications yet

withholding information about relevant accounts to Probation, even if it did not trigger liability under a vacated supervised release term or constitute illegal conduct, nonetheless speaks directly to factors relevant to Ms. Ceasar's resentencing. No one reasonably disputes that, during her supervised release term, Ms. Ceasar was aware of the conditions that required and prohibited specific conduct, yet she defied, if not evaded, the Court's conditions and efforts to supervise her. (*See* Gov't Sentencing Mem. at 20-48.) Moreover, after she was arraigned on the VOSR charges and pleaded guilty to four of the charges, her conditions of release prior to sentencing on the VOSR charges were essentially similar to her previous conditions of release while on bail, which she violated and led to her remand by Judge Weinstein before sentencing. Regardless of whether her conduct subjected her to criminal liability, or whether Ms. Ceasar simply did "a lot of stupid things from July 2020 to August 2021," as Defense counsel argues, her conduct speaks directly to numerous § 3553(a) sentencing factors and § 3661 information regarding her conduct. (Def. Ltr. at 4.)

Accordingly, Ms. Ceasar's argument that her conduct may be considered *only* to inform rehabilitation measures, rather than bear on sentencing, would improperly limit how the Court may consider information at sentencing. The Court is not persuaded by Ms. Ceasar's reliance on *United States v. Thomas*, 135 F.3d 873 (2d Cir. 1998), which presents unique and inapposite facts and predates

24

the Supreme Court's decisions in both *Pepper* and *Concepcion*.
Defense counsel relies on *Thomas* to argue that vacatur "wip[es]
the record clean" and precludes the Court's consideration of Ms.
Ceasar's supervised release conduct because it "was not unlawful
and would not have caused concern had she not been on supervised
release." (Def. Ltr. at 3.)

In *Thomas*, the defendant was charged with cutting off an
electronic location monitoring device she was required to wear as
a condition of probation. *See Thomas*, 135 F.3d at 874. She appealed
her probation violation sentence, arguing it was imposed in an
invalidly amended judgment. *See id.* She also argued that her
original sentence, home detention followed by supervised release,
was illegal and must be vacated. *See id.*

The Second Circuit agreed with the defendant that her multiple
sentences violated the law. The Circuit emphasized that there were
five illegal sentences imposed by the district court; in one, for
example, "the court mistakenly provided that nine months of home
confinement should *follow* her term of probation, rather than having
the term of probation include the period of home detention as a
special condition." *Id.* at 874 (emphasis in original). Ultimately,
the Second Circuit found the original and each amended sentence
were "imposed in violation of law" and vacated and remanded for
resentencing; it even noted the sentence imposed for the probation
violation "was itself jurisdictionally infirm[.]" *Id.* at 874, 76.

25

The Second Circuit in *Thomas* noted "there could be no violation of the probation that was illegally imposed by these now-void sentences" and vacated "completely the sentence and conviction of probation violation, because there was no lawfully imposed probation that was violated, and the conduct that would have violated the probation, had the probation been legally imposed, was not in itself illegal." *Id.* at 876. In crafting the remedy, the Court further noted that "because we are wiping the record clean of the probation violation, and returning to matters as they existed at the time of appellant's original sentencing, we direct the sentencing court not to consider, in its resentencing, the incident in which appellant cut off the bracelet." *Id.*

Notwithstanding the remedy in *Thomas*, *Thomas* does not preclude the Court from considering Ms. Ceasar's conduct during her supervised release, based on the reasoning that her conduct "was not unlawful and would not have caused concern had she not been on supervised release." (Def. Ltr. at 3.) First, *Thomas* is distinguishable. There, the sentence imposing the probation was *illegal* when imposed. Here, although the Second Circuit vacated the judgment, the judgment and supervised release term were *legal* when imposed. Indeed, neither the parties nor the Second Circuit's decision discussed supervised release, much less state that supervised release was unlawfully imposed.

Second, the remedy fashioned in *Thomas* directing the district

26

court to resentence the defendant and directing the district court not to consider the probation violation conduct at resentencing was *sui generis*. The direction not to consider the violative conduct is best understood as a remedy to the repeated and compounding sentencing errors in *Thomas*——five illegal sentences—— rather than stating a general principle limiting information to be considered at resentencing.

Third, unlike the instant case, the Second Circuit in *Thomas* was clear in its order "direct[ing] the sentencing court not to consider, in its resentencing, the incident in which appellant cut off the bracelet." *Thomas*, 135 F.3d at 876. Here, the Second Circuit made no findings regarding supervised release and, hence, imposed no such restriction on the district court, notwithstanding that Ms. Ceasar had already pleaded guilty to two VOSR charges when the Circuit issued its decision.

Further, the parties do not cite, nor has the Court found, any other case besides *Thomas* finding that *conduct* underlying a violation of a vacated probation or supervised release term could not be considered on resentencing. This includes *United States v. Harriston*, No. 05-cr-0016-13 (JS), 2022 WL 125799 (E.D.N.Y. Jan. 13, 2022), a case that Defense counsel cites. In *Harriston*, the defendant sought to dismiss VOSR charges and opposed resentencing after his 18 U.S.C. § 924(c) conviction was vacated as unconstitutional. *Id.* at *1. Judge Seybert found resentencing was

27

not warranted. *Id.* *1-3. She then dismissed VOSR charges based on the supervised release term related to the § 924(c) conviction and relied on *Thomas*, finding that there could be no violation of probation that was illegally imposed by a voided sentence. *Id.* at *3. Yet nothing in *Harriston* stated it would be improper to consider *conduct* from a vacated supervised release term; the case only states what is already agreed here: that Ms. Ceasar cannot be sentenced on VOSR charges related to a supervised release term that was included in a vacated judgment. None of the other cases that Defense counsel cites suggests that the Court must disregard Ms. Ceasar's conduct while on supervised release at resentencing.

Finally, Ms. Ceasar pleaded guilty in Docket 22-cr-459, pursuant to a plea agreement on October 14, 2022, for Failure to Appear in violation of 18 U.S.C. § 3146. In Ms. Ceasar's plea agreement, she agreed that at resentencing, the Court could consider her admission in her plea agreement that she committed the acts reported in her August 24, 2021 VOSR Report 2, and Charges Four and Nine in the September 29, 2021 VOSR Report 3, and that these acts, though not known to the Government at the time of her March 7, 2019 plea agreement regarding her vacated sentence, constitute information relevant to her resentencing. (Gov't Ltr. at 7.)

Accordingly, the Court finds it can and should consider Ms. Ceasar's conduct while on supervised release at her resentencing,

as permitted by § 3661 and as required by § 3553(a).

**IV.  MS. CEASAR'S MOTION TO WITHDRAW GUILTY PLEA AS TO § 3146**

Finally, Ms. Ceasar moves to withdraw her guilty plea entered on October 14, 2022, for Failure to Appear in violation of 18 U.S.C. § 3146, in Docket 22-cr-459. (Def. Ltr. at 5-7.)

Federal Rule of Criminal Procedure 11(d)(2)(B) permits Ms. Ceasar to move to withdraw her guilty plea after it is accepted, but before sentencing, only if she "can show a fair and just reason for requesting the withdrawal." *United States v. White*, No. 22-2307-CR, 2024 WL 5103317, at *2 (2d Cir. Dec. 13, 2024) (affirming district court's denial of motion to withdraw guilty plea where district court, "[a]t the outset of the sentencing hearing," addressed motion and concluded in relevant part that factual basis supported plea).

Factors affecting whether a reason is "fair and just" include: (1) the amount of time between the guilty plea and motion to withdraw; (2) whether the defendant asserted legal innocence in the motion to withdraw; and (3) whether withdrawal would prejudice the Government. *See United States v. Overton*, 24 F.4th 870, 879 (2d Cir. 2022). Further, Ms. Ceasar "bears the burden of showing that there are valid grounds for withdrawal." *White*, No. 22-2307-CR, 2024 WL 5103317, at *2 (citation omitted).

Ms. Ceasar does not and could not assert that the first and third *Overton* factors support withdrawal of her plea. First, the

29

time between her October 14, 2022 guilty plea and her December 27, 2024 motion, a period exceeding two years, favors the denial of her motion to withdraw because she had not previously raised the withdrawal of her plea and instead indicated in her submissions that sentencing on her Failure to Appear claim would proceed. Courts have found shorter delays weigh against granting a motion to withdraw a guilty plea. *See, e.g.*, *United States v. Dean*, 591 F. App'x 11, 14 (2d Cir. 2014) (four-month delay weighed against motion); *United States v. Thomas*, 651 F. Supp. 3d 685, 693 (S.D.N.Y. 2023) (same); *United States v. Wilson*, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011) (finding that when "[m]ore than two months elapsed from the time of the guilty plea until the first letter from [defendant] in which she sought to challenge her plea" that the amount of time elapsed did "not favor" defendant), *aff'd*, 523 F. App'x 30 (2d Cir. 2013).

As to the second factor, Ms. Ceasar offers no contradictory facts that undermine her sworn plea allocution, but rather asserts that her plea "lacked a factual basis," which the Court interprets as an argument asserting legal innocence. (Def. Ltr. at 5); *see Thomas*, 651 F. Supp. 3d at 693 (noting that "[t]he legal innocence factor requires the Court be 'convinced that there are legally cognizable defenses to the crime charged to exculpate the defendant'"). Ms. Ceasar makes three arguments regarding the basis of her guilty plea: (1) that her guilty plea lacks the element of

release under Chapter 207; (2) that, even assuming she was released under Chapter 207, her guilty plea lacks an additional element because the Court did not set "conditions of release" requiring her to appear in court for further proceedings; and (3) that, as a matter of principle, she is not criminally liable for failing to appear because such liability would "impermissibly give effect to an illegal sentence" following vacatur of the judgment containing the supervised release term. (*Id.* at 6.)

The Government makes numerous arguments in opposition. First, the Government asserts that Ms. Ceasar's motion to withdraw her guilty plea to the Failure to Appear charge, which was accepted by the Court on October 14, 2022, is untimely, especially when Defense counsel raised the same question of the plea's factual basis during plea negotiations, and yet Ms. Ceasar accepted and entered the guilty plea. (*See* ECF No. 235-1, Exhibit 1, September 2022 Correspondence Between Parties; Gov't Resp. at 6.)

Second, the Government asserts that Ms. Ceasar's release following her initial appearance for her supervised release violations on November 20, 2020, and her guilty pleas to the four violations, was pursuant to Federal Rule of Criminal Procedure 32.1(a)(6), and thus was necessarily a release under 18 U.S.C. § 3143(a)(1) (release pending sentencing), which is included in Chapter 207. (Gov't Ltr. at 15; Gov't Resp. at 6-7.) Accordingly, when Ms. Ceasar did not appear at the August 25, 2021 conference,

31

she was a person who had been "released under [Chapter 207]," as § 3146 requires. (*Id.*) The Government argues that § 3146 does not require the Court, at the initial appearance for violations under Rule 32.1(a)(6), to use any "magic words" to invoke § 3143(a). (Gov't Resp. at 7.)

Third, the Government asserts that the Court should reject Ms. Ceasar's argument that sentencing her for the Failure to Appear offense would "impermissibly give effect to an illegal sentence" because, by her same logic, courts would perversely permit defendants to gamble on the likelihood of appellate vacatur of their sentences of supervised release and ignore court-imposed conditions and orders, potentially without later consequence, during appeal. (*Id.* at 8.)

Further, Ms. Ceasar does not address whether withdrawal of her plea would cause prejudice to the Government, but there is no burden on the Government to show prejudice "where the defendant has not shown sufficient grounds to justify withdrawal." *United States v. Rampersant*, 704 F. Supp. 3d 373, 381 (E.D.N.Y. 2023). Nonetheless, because over two years have passed between Ms. Ceasar's October 14, 2022 guilty plea to the § 3146 charge and her December 27, 2024 motion to withdraw her plea, the Court finds that the Government would be prejudiced if the plea were withdrawn, because the passage of time risks that witnesses' memories may fade and evidence may be lost or destroyed. *See United States v.*

*Vega*, No. 7-cr-707 (ARR), 2012 WL 1925876, at *11 (E.D.N.Y. May 24, 2012) (denying motion to withdraw guilty plea where defendant waited over two years before moving to withdraw, and finding government prejudiced because "witnesses' memories may fade due to the passage of so long a period of time").

### A.    Release Under Chapter 207

The Court finds that there is a factual and legal basis for Ms. Ceasar's guilty plea to the § 3146 offense, and the Court denies her motion to withdraw her guilty plea, for the following reasons.

Ms. Ceasar was released following her initial appearance on the VOSR charges under Federal Rule of Criminal Procedure 32.1(a)(6) and 18 U.S.C. § 3143(a)(1) of Chapter 207, as § 3146 provides. The Court notes that Ms. Ceasar's conditions of supervised release were continued. These conditions of supervised release closely mirrored the conditions of bail previously imposed prior to Ms. Ceasar's initial sentencing by Judge Weinstein, before Judge Weinstein revoked and remanded her to custody for violating these conditions. Thus, Ms. Ceasar has been subject to specific conditions that were consistent with judicial oversight while she was awaiting her sentence on bail for the Material Support and Obstruction charges and for the supervised release charges.

Moreover, pursuant to 18 U.S.C. § 3143(c), the Court "shall treat a defendant in a case in which an appeal has been taken by

33

the United States...in accordance with section 3142...unless the defendant is otherwise subject to a release or detention order." 18 U.S.C. § 3143(c). After the Second Circuit vacated Ms. Ceasar's sentence and remanded this case for resentencing on August 18, 2021, the Court repeatedly ordered the parties to appear on August 25, 2021, to discuss sentencing and the Government's motion to remand her.

Both parties agree that Ms. Ceasar had been released as of August 25, 2021, the date she failed to appear. Ms. Ceasar had been on release pending sentencing on her supervised release violations, had been on release pending the Government's appeal, and she was serving a term of supervised release, pursuant to specific conditions. The Government notes that Ms. Ceasar's "supervised release term...bound [her] when she was released and attempted to flee[.]" (Gov't. Resp. at 8.) Defense counsel argues that *because* Ms. Ceasar was on supervised release on August 25, 2021, Chapter 227 governs, not Chapter 207, and that "Ms. Ceasar continued to be on supervised release——not bail under Chapter 207——as of [August 25, 2021]." (Def. Ltr. at 6.)[3] Though both parties

---

[3] Defense counsel twice made this argument days after Ms. Ceasar's flight. (*See* ECF No. 157 (noting in opposition to Government's motion for detaining Ms. Ceasar, following Second Circuit decision, that § 3143 did "not apply in the current situation, where, as a formal matter, Ms. Ceasar's prior sentence has not yet been vacated, because the mandate has not issued," and "until the Court of Appeals decides the petition for panel rehearing and rehearing en banc, Ms. Ceasar's sentence remains intact, including that she has served the term of imprisonment imposed and is currently on supervised release"); ECF No. 163 ("Jurisdiction does not return to this Court until

agree that on August 25, 2021, Ms. Ceasar's supervised release conditions governed her activities, they disagree whether Chapter 207 (governing Release and Detention Pending Judicial Proceedings) or 227 (governing Sentences) applies.

The Court finds that on August 25, 2021, when Ms. Ceasar failed to appear, Ms. Ceasar was on release (1) under the terms of supervised release; (2) under Rule 32.1(a)(6); (3) under 18 U.S.C. § 3143(a)(1) because Ms. Ceasar was awaiting imposition of a sentence for violations of her supervised release, and because she was to be resentenced pursuant to the Second Circuit's order that she be resentenced for her Material Support and Obstruction convictions as provided by 18 U.S.C. § 3143; and (4) under 18 U.S.C. § 3143(c) because she was subject to supervised release pursuant to Judge Weinstein's judgment pending appeal of the incarceratory sentence by the Government. Thus, Ms. Ceasar violated 18 U.S.C. § 3146 of Chapter 207. Federal Rule of Criminal Procedure 32.1 governs the procedure for revocations and modifications of supervised release. Rule 32.1, subsection (a)(6), regarding "Release or Detention" after an initial appearance on VOSR charges, states in relevant part that the "judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings," including a plea and sentencing. Fed. R. Crim. P.

---

the mandate issues in the Court of Appeals. Ms. Ceasar's prior sentence remains intact until the Court of Appeals decides the petition for panel rehearing and rehearing en banc.").)

32.1(a)(6). As of Ms. Ceasar's guilty plea to the VOSR charges on January 5, 2021, and as of the Second Circuit's August 18, 2021 decision ordering that Ms. Ceasar be resentenced, § 3143(a)(1) required that a defendant like Ms. Ceasar who pleaded guilty to VOSR charges and was facing sentencing on those charges, and resentencing for her guilty pleas to the Material Support and Obstruction offenses, be detained unless "the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." § 3143(a)(1). If "the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c)." *Id.* Accordingly, when Ms. Ceasar was released following her initial appearance for her first VOSR charges on November 20, 2020, and remained on release after she pleaded guilty to certain VOSR charges on January 5, 2021, her release was governed by Rule 32.1(a)(6)——necessarily a release under § 3143(a), which is part of Chapter 207.

Ms. Ceasar proffers a technical argument that because Rule 32.1(a)(6) states a judge "may" release a person under § 3143(a)(1), the permissive language means the Court "allowed Ms. Ceasar to continue on supervised release, rather than making a determination under 18 U.S.C. § 3143(a)(1)," because the latter would have required "a release order, imposing bail conditions,

giving bail warnings, etc." (Def. Resp. at 3 n.3.) Further, in its letter dated January 29, 2025, the Defense cites a recent District Court of Connecticut opinion holding that § 3143 does not authorize detaining supervisees charged with VOSRs. *See United States v. Mercado*, No. 3:13-cr-181 (SRU), 2025 WL 297429 (D. Conn. Jan. 24, 2025), *appeal filed*, No. 25-206 (2d Cir. 2025). Indeed, the opinion appears to conclude no statutory authority governs detaining supervisees charged with VOSRs. The implication here is if neither § 3143 nor any other authority governs detaining (and releasing) supervisees charged with VOSRs as provided by Rule 32.1(a)(6), then following Ms. Ceasar's initial appearance for her first VOSR charges, she was not "released under" § 3143, and therefore not released under Chapter 207, and cannot be guilty of a failure to appear pursuant to § 3146. Defense counsel also argues that a supervised release violation is not an "offense" as defined in § 3143(a), making it inapplicable to Ms. Ceasar. (ECF No. 242 at 3.)

Defense counsel's arguments are not persuasive. First, the argument that because Rule 32.1(a)(6) provides that a judicial officer "may" release or detain a person on supervised release who is charged with a violation, the permissive use of "may" renders § 3143 of the Bail Reform Act inapplicable, is without merit. No authority except Chapter 207 governs the release or detention of a person, pending judicial proceedings, who has been charged with, or who has pleaded guilty to, a federal offense or a violation of

supervised release. *See United States v. Galitsa*, No. 17-cr-00324 (VEC), 2016 WL 11658188, at *4-*5 (S.D.N.Y. July 28, 2016) (noting that "[t]he Government does not dispute that the Bail Reform Act provides the exclusive means to hold a defendant for criminal prosecution" and that "[i]f the Government chooses to prosecute, then it must proceed in accordance with all the rules that govern criminal prosecutions," where "[f]irst and foremost among those rules is the Bail Reform Act"); *see also United States v. Caballero*, 714 F. App'x 623, 625 (9th Cir. 2017) (noting "there is only one statutory authority under which a district judge can release a defendant from custody: the Bail Reform Act," and affirming defendant's conviction under § 3146 because defendant was, as "a matter of law," "released under the Bail Reform Act"); *United States v. Burns*, 667 F.2d 781, 783 (9th Cir. 1982) (stating "there is no other statutory authority [other than Bail Reform Act] for the release of convicted persons" in federal court); *United States v. Williard*, 726 F. Supp. 590, 594 (E.D. Pa. 1989) (noting Bail Reform Act "provides the only mechanism by which a judge can release or detain a defendant pending sentencing, execution of a sentence, or appeal"), *aff'd*, 914 F.2d 245 (3d Cir. 1990).

Indeed, the Second Circuit has specifically upheld a Failure to Appear conviction where a defendant failed to appear to court proceedings related to a supervised release revocation. In *United*

*States v. Prescott*, the Second Circuit held there was "no error in the district court's conclusion that [the defendant] 'failed to appear' within the meaning of section 3146" where the defendant "concede[d] that the district court scheduled a revocation hearing, that he was informed of the hearing time by his probation officer, and that he knowingly and intentionally left the courthouse and failed to appear for the revocation hearing, only to be apprehended weeks later." 360 F. App'x 209, 211 (2d Cir. 2010).

Furthermore, Ms. Ceasar's supervisory conditions were, in the Court's view, identical to the conditions that had been and would be imposed to ensure her continued appearance in Court and protect the community, had a formal bail hearing been conducted. Regardless, the Court agrees with the government's argument that § 3146 does not require the Court, at the initial appearance for violations of supervised release under Rule 32.1(a)(6), to use any "magic words" to invoke § 3143(a). Courts have found that defendants released following initial appearances for supervised release violations were released under the Bail Reform Act, even where the district judge did not explicitly state the authority for release. In *United States v. Woodard*, the District of Nebraska specifically noted that "the release of any person appearing before the court on a Petition for Offender Under Supervision, whether by arrest or summons, is governed by and determined under § 3143(a)(1)

of the Bail Reform Act" via Rule 32.1(a)(6). No. 4:10-cr-3083, 2011 WL 1790818, at *2 (D. Neb. Apr. 19, 2011), *report and recommendation adopted*, No. 4:10-cr-3083, 2011 WL 1780543 (D. Neb. May 10, 2011). The *Woodard* court found that "the evidence of record support[ed] a finding that defendant was 'released under' the Bail Reform Act" for the purposes of 18 U.S.C. § 3146(a) where the defendant was released following his initial appearance pending a supervised release revocation hearing, even when the judge "did not specifically state the release was ordered pursuant to the terms of the Bail Reform Act" and "made no explicit findings regarding risk of flight or danger to the community[.]" *Id.* at *2-3.

Second, the Court respectfully is not persuaded by the opinion of the District Court of Connecticut in *Mercado*. Finding § 3143 does not authorize detaining supervisees charged with VOSRs is inconsistent with Rule 32.1, § 3143, and § 3142(d)(1)(A)(ii) ("If the judicial officer determines that...such person...is, and was at the time the offense was committed, on...release pending imposition...of sentence, appeal of sentence or conviction, or completion of sentence....") and is contrary to Second Circuit case law. *See, e.g.*, *United States v. Grady*, 818 F. App'x 86, 88 (2d Cir. 2020) (noting "[r]evocation of supervised release proceedings are governed by Rule 32.1 of the Federal Rules of Criminal Procedure" and that "'pending further proceedings,' the

40

judge 'may release or detain the person under 18 U.S.C. § 3143(a)(1)'" (citing Fed. R. Crim. P. 32.1(a)(6))); *United States v. Jamel Kennedy*, No. 12-cr-863-9, 2025 WL 296314, at *2 (S.D.N.Y. Jan. 24, 2025) ("In contrast to ordinary pretrial detention, in which the Government bears the burden to establish the need for detention, 18 U.S.C. § 3143(a)(1) and Federal Rule of Criminal Procedure 32.1(a)(6) set forth a rebuttable presumption of detention for a defendant who is presented on an alleged violation of supervised release."); *United States v. Newton*, No. 18-cr-373-5 (RJS), 2023 WL 8879273, at *1 (S.D.N.Y. Dec. 22, 2023) (denying bail application of supervisee pending resolution of alleged violations, finding defendant "failed to establish 'by clear and convincing evidence' that he does not 'pose a danger to any other person or to the community'" (citing Fed. R. Crim. P. 32.1(a)(6) and 18 U.S.C. § 3143(a)(1)); *Scott v. Lindsay*, No. 07-cv-2622 (JG), 2007 WL 2585072, at *2 (E.D.N.Y. Sept. 10, 2007) (noting Rule 32.1(a)(6) provides that at the initial appearance on VOSR charges, the "judge may release or detain the person [*i.e.,* the person awaiting the revocation hearing,] under 18 U.S.C. § 3143(a) pending further proceedings" (modification in original) (internal quotations omitted) (quoting Fed. R. Crim. P. 32.1(a)(6))).

Further, since *Mercado*, other courts have expressly rejected its logic. For example, a magistrate judge in the Western District of Washington recently rejected *Mercado*'s reasoning, noting that

41

"[s]ince the enactment of the Non-Detention Act over 54 years ago, *Mercado* appears to be the only instance where a court has proposed the novel theory that the Non-Detention Act restricts a court's authority to detain individuals pending a hearing on revocation of supervised release." *United States v. Phillips*, No. CR-21-030 (JLR), 2025 WL 484706, at *2 n.3.[4]

These cases also foreclose Defense counsel's argument that a VOSR is not an "offense" as defined in 18 U.S.C. § 3143(a), and thus Ms. Ceasar was not subject to § 3143(a). (ECF No. 242 at 3.) The aforementioned cases demonstrate that courts in this Circuit (like other circuits) find Rule 32.1(a)(6), through § 3143(a)(1), governs supervisees' release or detention pending VOSR charges. *See Phillips*, No. CR-21-030 (JLR), 2025 WL 484706, at *1 n.1 (noting that "every circuit court that has addressed [the issue of § 3143(a)(1) being incorporated into Rule 32.1] has applied the same standards" (citing *Grady* and other cases from the First, Fourth, Fifth, and Eighth Circuits)).

---

[4] Since Ms. Ceasar's supplemental letter citing *United States v. Mercado*, a magistrate judge in the Western District of New York has "reluctantly agree[d]" with *Mercado* in three instances. *United States v. Wade*, No. 1:09-cr-260 (WMS) (JJM), 2025 WL 786383, at *1 (W.D.N.Y. Mar. 12, 2025) ("I had always believed that the court has the authority to detain an individual charged with violating the conditions of supervised release, pending a violation hearing before a District Judge. Until last week, no one had ever argued to me that the court lacks that authority."); *see United States v. Clark*, No. 1:17-cr-0043 (LJV) (HKS), 2025 WL 875458 (W.D.N.Y. Mar. 21, 2025); *United States v. Taylor*, No. 1:11-cr-290 (RJA) (HKS), 2025 WL 914064 (W.D.N.Y. Mar. 26, 2025).

Accordingly, on August 25, 2021, when Ms. Ceasar knew she had been ordered to appear and knew that the Second Circuit had ordered that she be resentenced, Ms. Ceasar did not appear for the status conference before the Court. Thus, Ms. Ceasar was "released" pursuant to Rule 32.1(a)(6), Chapter 207 § 3143(a), and § 3143(c) pending the Government's appeal. Ms. Ceasar's failure to appear was properly charged, and she properly pleaded guilty to a violation of § 3146.

Importantly, even assuming, *arguendo*, that Ms. Ceasar's supervised release term was vacated as of August 18, 2021 (when the Second Circuit's decision issued), and not when the Mandate issued on November 16, 2021, Ms. Ceasar was still required to comply with the conditions of her release under § 3143(c) (release pending appeal by the government), as provided by Chapter 207, on August 25, 2021, when she did not appear at the scheduled conference. Sections 3143(a) and (c), both under Chapter 207, governed Ms. Ceasar's "release or detention" at that point, because she had "been found guilty of an offense" (namely, the underlying Material Support and Obstruction offenses to which she previously pleaded guilty). The Second Circuit's decision was released on August 18, 2021, and Ms. Ceasar was aware of the Second Circuit's decision. Even though the Mandate had not been issued, Ms. Ceasar was "awaiting imposition or execution of sentence," albeit a resentencing, and she technically was still under release pending

43

appeal by the Government. §§ 3143(a)(1), (c)(2). In other words, she was either on release pending the Government's appeal under § 3143(c) or she would have reverted to her status as a defendant who has pleaded guilty and was awaiting sentencing, circumstances governed by § 3143(a)(1). *See Scott*, No. 07-cv-2622 (JG), 2007 WL 2585072, at *2 (E.D.N.Y. Sept. 10, 2007) (noting a "distinction without a difference" between a defendant released pending a VOSR hearing versus a defendant released pending sentencing, because orders of release in both cases were "under the same statutory authority" of 18 U.S.C. § 3143(a), which "governs the court's decision whether to release or detain a defendant awaiting sentence").

**B.    Appearance Required by Ms. Ceasar's Release Conditions**

Furthermore, the Court finds that Ms. Ceasar had been released under Chapter 207, and did knowingly fail to appear before the Court on August 25, 2021, as was required by her conditions of release.

The Government argues that as of Ms. Ceasar's November 20, 2020 initial appearance for VOSR Charges 1 through 3, she was necessarily released under § 3143(a). (Gov't Ltr. at 15.) Defense counsel counters that, even if Ms. Ceasar were released under Chapter 207, the Court did not "impose any 'conditions of release'" that required her appearance under § 3146(a)(1), and that, although she initially appeared on November 20, 2020, on certain violations,

44

"the Court's minute order reflects that no release proceeding was
held, no bail warnings were given, and no bond was set." (Def.
Ltr. at 5-6.) Defense counsel further argues that at no point
before the August 25, 2021 conference did the Court impose required
conditions of release. (*Id.*)

First, the Court disagrees with Defense counsel that specific
bail warnings are required under § 3146. First, as noted
previously, at Ms. Ceasar's initial appearance on her VOSR charges,
her continued release was subject to the same conditions as her
supervised release, which the Court viewed as sufficient to ensure
her continued appearance in Court and adherence to the law. In
*United States v. Prescott*, the Second Circuit rejected the
defense's argument that the defendant "did not 'fail to appear'"
to a revocation hearing "within the meaning of section 3146 because
[the Judge] never personally 'directed him to appear in any Court,
on any date, at any time,'" noting "[t]here is no
requirement...that a defendant must have learned of a scheduled
court appearance directly from the district court judge in order
to be found guilty of violating section 3146." 360 F. App'x at
211. "To the contrary," the Circuit noted, "it is well established
that '[t]he Government does not have to prove that the defendant
actually received notice that he was required to appear,' so long
as the defendant was aware of the required appearance[.]" *Id.*
(citation omitted); *see United States v. Wroblewski*, 816 F.3d 1021,

45

1024 (8th Cir. 2016) (citing *Woodard*, No. 4:10-cr-3083, 2011 WL 1790818, at *1-2 as example of case where, in the context of a § 3146 violation for failing to appear at revocation proceedings, "defendant's continued release was governed by [the] Bail Reform Act even though district judge did not specifically state authority under which he was released"); *Williard*, 726 F. Supp. at 594 (noting that Bail Reform Act "does not impose the rigid requirement that a judge continually reiterate that a defendant is released on personal recognizance or the conditions of release").

Second, regardless of whether the Court explicitly discussed conditions of release at the November 20, 2020 initial appearance, Ms. Ceasar was allowed to remain on release pursuant to explicit conditions. Moreover, at Ms. Ceasar's January 5, 2021 change of plea hearing for VOSR Charges 1 and 3 (nearly 8 months before her flight), Ms. Ceasar's guilty plea was accepted, and the Court acknowledged that she was subject to conditions of release that would continue pending sentencing on the violations: specifically, the Court advised Ms. Ceasar: "I understand that you are going to be continuing your supervision with your officer and, Government, you're not seeking any new conditions, are you, at this time prior to sentencing?" (ECF No. 179 at 23:14-18.) The Government confirmed it was not seeking any new conditions. (*Id.*) Probation then requested to extend her "original order of home confinement with location monitoring" until sentencing on Charges 1 and 3, to which

her counsel did not object, and in fact "support[ed] the request." (*Id.* at 23:24-24:6.) The Court then confirmed that the conditions of release would continue ("[w]e will continue the condition of Ms. Ceasar's home confinement with location monitoring up until the date of sentencing."). (*Id.* at 25:4-6.)

Further, neither Ms. Ceasar nor her counsel argue that she was unaware of any of the dates that she was due in court, even if the Court did not directly advise her of dates she must appear. As the Second Circuit has noted, "[t]here is no requirement...that a defendant must have learned of a scheduled court appearance directly from the district court judge in order to be found guilty of violating section 3146. To the contrary, it is well established that '[t]he Government does not have to prove that the defendant actually received notice that he was required to appear,' so long as the defendant was aware of the required appearance." *Prescott*, 360 F. App'x at 211.

Here, the Court issued multiple orders requiring Ms. Ceasar's appearance on August 25, 2021. On July 29, 2021, the Court ordered that "[a]ll parties shall appear for a status conference by videoconference on August 25, 2021, at 9:00 am[.]"[5] After the

---

[5] The Court notes that the August 25, 2021 status conference was scheduled during the COVID-19 pandemic. Accordingly, ordering the parties to appear by videoconference was an accommodation for reasons of health and safety at a time when the prevalence of the virus was waxing and waning. The fact that Ms. Ceasar was ordered to appear by videoconference, however, was immaterial to her obligation to appear before the Court when ordered to do so.

Second Circuit's August 18, 2021 decision vacating Ms. Ceasar's sentence, and remanding for resentencing, on August 19, 2021, this Court issued an order reiterating that "[a] status conference in this action has been scheduled for 8/25/2021 at 9am." In response to the Government's letter motion on August 23, 2021, seeking an order that Ms. Ceasar be held in custody pending further proceedings in the Court of Appeals and the District Court (*see* ECF No. 156; Gov't Ltr. at 4), and Probation's supplemental VOSR filed on August 24, 2021, reporting five additional violations based on evidence provided by the FBI, this Court again ordered on August 24, 2021, that "[a]ll parties shall appear for a status conference by videoconference on August 25, 2021, at 9:00 am."

Finally, Ms. Ceasar's own sworn statements following her failure to appear on August 25, 2021, establish that she knew she had to appear in court on August 25, 2021, and chose not to do so. For example, after Ms. Ceasar was apprehended and detained in a New Mexico county jail, she made several recorded phone calls in which she admitted, *inter alia*:

> Okay long story...I don't even care if this phone is recorded or not, I don't even care, the FBI already knows. So you know, um, I was supposed to get resentenced, remember I told you they want me in prison. So my lawyer was like, 'We're going to remand you anyway'. And I was like, 'I gotta go to prison?' So I was like, 'I'm not going to prison, I don't care, I'd rather die than go to prison,' so I was trying to flee the country. I'm in Mexico....Yeah, I'm in Mexico. So like, you know, I had people help me or whatever, to leave or whatever....

48

(Gov't Sentencing Mem. at 60.) She further stated in a recorded phone call while in the New Mexico county jail that:

> I was going to court that day. And I was like, well I'm not going to court. I'm not going. So I left. And it took them today, right now, a couple hours ago, to arrest me. Cause they didn't know where I was at. I was really about to be overseas, but like they caught me right before I was about to go overseas.

(*Id.*) Further, on October 14, 2022, during her plea allocution to the Failure to Appear offense, Ms. Ceasar specifically allocuted that she "knew [she] had a court appearance scheduled for August 25th, 2021 in the Eastern District of New York" and "knowingly failed to appear in court as required." (Dkt 22-cr-459, ECF No. 10, Plea Transcript at 28:3-7.) She confirmed she "knew that because of the prior violations of supervised release, [she] had been permitted to remain on release with certain conditions," and she "knew one of those conditions involved returning to court when ordered[.]" (*Id.* at 28:8-15.)

Accordingly, this Court's orders, and Ms. Ceasar's own statements, including sworn statements during her change of plea hearing, establish she knowingly failed to appear before the Court on August 25, 2021, as required by the conditions of her release.

### C.   Impermissibly Giving Effect to an Illegal Sentence

Lastly, the Court disagrees with Ms. Ceasar's assertion that notwithstanding her guilty plea to violating § 3146, sentencing of this offense would impermissibly give effect to an illegal

sentence.

Defense counsel argues as follows: vacatur of Ms. Ceasar's judgment "wip[ed] the slate clean," requiring that the Court treat the original sentence as if it were never imposed; therefore, proceedings, including Ms. Ceasar's failure to appear at the status conference on August 25, 2021, related to the resentencing and VOSR charges, "were without effect." Furthermore, Ms. Ceasar argues that conduct related to her supervised release term, including knowingly failing to appear as ordered at the August 25, 2021 status conference, cannot form the factual basis of a § 3146 violation. (Def. Ltr. at 6-7.)

Accepting Ms. Ceasar's logic requires that the Court ignore Ms. Ceasar's conduct as if it simply did not occur. The cases do not support Ms. Ceasar's logic. Although Ms. Ceasar will not be sentenced for violations related to the vacated supervised release term, the Failure to Appear offense is not a supervised release violation; it is a new violation of a separate federal statute by a defendant whose sentence had been appealed by the Government, resulting in the vacatur of the sentence and remand for resentencing. Thus, on August 25, 2021, Ms. Ceasar was released under § 3143. The Court agrees with the Government that holding Ms. Ceasar responsible after pleading guilty to the Failure to Appear offense would not "impermissibly give effect to an illegal sentence." To hold otherwise would perversely invite defendants to

50

ignore court orders and conditions of release pending appeal and resentencing, without consequence, by gambling on the possible vacatur of a supervised release sentence that was not found to be unlawful by the Second Circuit.

Accordingly, for these reasons, the Court denies Ms. Ceasar's motion to withdraw her guilty plea to the Failure to Appear offense in violation of 18 U.S.C. § 3146.

## CONCLUSION

For the reasons above, the Court finds that the Government has standing to object to Probation's request to withdraw the VOSR reports, and the Court denies Probation's request to withdraw the VOSR reports. Further, the Court finds that it may consider the conduct described in the VOSR charges and the parties' sentencing submissions, notwithstanding that the Court will not sentence Ms. Ceasar on those charges. Finally, the Court denies Ms. Ceasar's motion to withdraw her guilty plea to the violation of 18 U.S.C. § 3146. Ms. Ceasar is to appear for sentencing as previously scheduled on April 9, 2025, at 1:00 p.m.

**So ordered.**

Dated:    April 1, 2025
          Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York